**Penson Financial Services, Inc.**
1700 Pacific Ave., Suite 1400
Dallas, TX 75201
(214) 765-1100

# Statement of Account

CALL NOW INC
PO BOX 47535
SAN ANTONIO TX 78265-7535

**Account Information**

| | |
|---|---|
| Account Number: | ████2454 |
| Financial Advisor #: | PI01 |

**Your Financial Advisor**
PENSON FINANCIAL HOUSE REP
(214) 765-1307

**Statement Period**
March 1, 2010 to March 31, 2010

**Office Serving You**
1700 Pacific Ave.
Suite 1400
Dallas, TX 75201
(214) 765-1100

## Account Value

| Asset Category | Current Value 03/31/10 | Prior Value 02/26/10 | Percent of Acct Assets | Estimated Annual Income | Estimated Current Yield |
|---|---|---|---|---|---|
| Equities | 10,169,474.54 | 11,199,606.62 | 36.95% | | |
| Fixed Income | 17,351,359.66 | 15,166,747.85 | 63.05% | 3,882,186.85 | 22.37% |
| Total Portfolio Values | 27,520,834.20 | 26,366,354.47 | 100.00% | 3,882,186.85 | 14.11% |
| Less: Margin Loan Balance | (7,336,712.83) | (13,913,644.61) | (26.66%) | | |
| Total Account Value | 20,184,121.37 | 12,452,709.86 | 73.34% | 3,882,186.85 | 19.23% |

## Asset Allocation



EQUITIES 36.95%
FIXED INCOME 63.05%

## Income Summary

| | This Period | Year to Date |
|---|---|---|
| Taxable Interest | 0.00 | 1,781.25 |
| Interest - Non-Taxable | 10,336.08 | 12,586.08 |
| Margin Interest | (41,074.30) | (199,468.98) |
| Total Income | (30,738.22) | (185,101.65) |

F.O.I.A. Confidential Treatment Requested on Behalf of Penson Worldwide Inc. by Akin Gump Strauss Hauer & Feld LLP

PWI-SEC-015014

PX 13

F.O.I.A. Confidential Treatment Requested on Behalf of Penson Worldwide Inc. by Akin Gump Strauss Hauer & Feld LLP

PWI-SEC-015015

The Account of the Customer is subject to the following terms and conditions ("Agreement") which the Customer agrees to, and accepts by use, maintenance and/or continuation of the Account notwithstanding any notice or statement of intention to You to the contrary.

1. Definitions. "Account" shall refer individually and collectively to all accounts which the Customer has previously opened, now has open or may open in the future, in which the Customer has any interest, with You or any Introducing Broker, and any and all previous, current and future transactions in such accounts. "Customer" refers to the individual(s) and/or entity(ies) in whose name the Account referenced on the face of this Account statement is carried or who may otherwise have any Interest in an Account. "Introducing Broker" means any brokerage firm which introduces securities transactions on behalf of the Customer, which transactions are cleared through You, whether one or more. "Obligations" means all indebtedness, debit balances, liabilities or other obligations of any kind of the Customer to You, whether now existing or hereafter arising. "Securities or other Property" shall mean all money, securities, commodities or other property of every kind and nature and all contracts and options relating thereto, whether for present or future delivery. "You" or "Your" refers to Penson Financial Services, Inc.

2. Payment of Indebtedness Upon Demand. The Customer shall at all times be liable for the payment upon demand of any Obligations owing from the Customer to You, and Customer shall be liable to You for any deficiency remaining in any Account in the event of the liquidation thereof, in whole or in part, by You, the Introducing Broker, or by the Customer, and the Customer shall pay such Obligations upon demand.

3. Security Interest; Liquidation. All Securities or other property now or hereafter held, carried or maintained by You in or for the Account shall be subject to a first and prior lien and security interest for the discharge of all of the Obligations of the Customer and are to be held by You as security for the payment of the Obligations of the Customer to You, to the fullest extent allowed by law. You shall have the right to transfer Securities or other Property so held by You from or to any Account of the Customer whenever You so determine. Whenever the Customer does not, on or before the settlement date, pay in full for any Securities or other Property purchased for the Account of the Customer, or deliver any Securities or other Property sold for such Account, or if any other Obligations of the Customer to You are unpaid, You are authorized (a) until payment or delivery is made, to pledge, repledge, hypothecate or rehypothecate, without notice, any and all Securities or other Property which You may hold for the Customer (either individually or jointly with others), separately or in common with other Securities or other Property, for the sum then due or for a greater or lesser sum and without retaining in your possession and control for delivery a like amount of similar Securities or other Property; (b) to sell any or all Securities or other Property which You may hold for the Customer (either individually or jointly with others); (c) to sell any or all Securities or other Property in the Account of the Customer with You (either individually or jointly with others); (d) to buy any or all Securities or other Property which may be short in such Account; and/or (e) to cancel any open orders and to close any or all outstanding contracts; all without notice of sale or purchase, or other notice or advertisement, and that any prior demand or notice shall not be a waiver of Your rights provided herein. You shall have the discretion to determine which Securities or other Property are to be sold and which contracts are to be closed. Any such sales or purchases may be made at Your discretion on any exchange, the over-the-counter market or any other market where such business is usually transacted, or at public auction or private sale, and You, Your affiliates or the Introducing Broker or its affiliates may be the purchaser or seller for any such person's own Account. You are authorized, in Your discretion, should You for any reason whatsoever deem it necessary for Your protection, without notice, to cancel any outstanding order, to close out the Account of the Customer, in whole or in part, or to close out any commitment made on behalf of the Customer.

4. Lending Agreement; Margin or Short Accounts. With respect to any margin or short Account maintained by the Customer, You are authorized to lend to yourself, as principal or otherwise, or to others, any Securities or other Property held by You on margin for any Account or as collateral therefor either separately or without other securities. The Customer will at all times maintain such Securities or other Property in the Account of the Customer for margin and/or maintenance purposes as required by You in Your sole discretion, on demand, in accordance with Your general policies regarding margin and maintenance requirements, as such may be modified from time to time, or at other times as You may require, and will be charged, in accordance with Your usual custom or as otherwise determined by You with interest at rates permitted by the laws of the State of Texas. With respect to any margin or short Account of the Customer, You shall have the right at any time and from time to time, in accordance with Your general policies regarding Your margin or maintenance requirements, short Accounts or Accounts in general, as such may be modified from time to time, or at an earlier point in time than called for by said general policies, in the event that You feel insecure with respect to the Customer's account for any reason in Your sole discretion: (a) to sell any or all Securities or other Property which You may hold for the Customer (either individually or jointly with others); (b) to sell any or all Securities or other Property in the Account of the Customer with You (either individually or jointly with others); (c) to buy any or all Securities or other Property which may be short in such Account, and/or (d) to cancel any open orders and to close any or all outstanding contracts; all without demand for margin or additional margin, notice of sale or purchase or other notice or advertisement, and that any prior demand or notice shall not be a waiver of Your rights provided herein. You shall have the discretion to determine which Securities or other Property are to be sold and which contracts are to be closed. Any such sales or purchases may be made at Your discretion on any exchange, the over-the-counter market or any other market where such business is usually transacted, or at public auction or private sale, and You, Your affiliates or the Introducing Broker or its affiliates may be the purchaser or seller for any such person's own Account.

5. Account Carried as Clearing Broker. The Customer understands that You are carrying the Account of the Customer as clearing broker by arrangement with the Customer's Introducing Broker through whose courtesy the Account of the Customer has been introduced to You. The Customer understands that You act as custodian for funds and securities deposited with You, through the Customer's Introducing Broker, or as a result of transactions You may process for the Customer's Account. Inquiries regarding the Customer's Account or the activity therein should be directed to the Introducing Broker. If Customer is unable to reach the Introducing Broker concerning account activity, or a complaint, Customer may contact Penson at 1700 Pacific Avenue, Suite 1400, Dallas, TX 75201, (214) 765-1100, and speak with the Compliance Department. The Customer understands that the Introducing Broker and not You, is responsible for compliance with all applicable laws and regulations in connection with the Customer's Account. Until receipt by You from the Customer of written notice to the contrary, you may accept and rely upon from such Introducing Broker and its representatives employees and other agents, without any inquiry or investigation by You; (a) orders for the purchase or sale in the Customer's Account of Securities or other Property, and (b) any other instructions concerning the Customer's Account. The

5. (continued)
Customer understands that You act only to clear trades introduced by the Customer's Introducing Broker and to effect other back office functions for the Customer's Introducing Broker. The Customer confirms to You that the Customer is relying for any advice concerning the Customer's Account solely on the Customer's Introducing Broker. The Customer understands that You are not a principal of or partner with and do not control in any way, the Introducing Broker or its representatives, employees or other agents. The Customer understands that You will not review the Customer's account and will have no responsibility for trades made in the Customer's Account. The Customer agrees that You shall not be responsible or liable for any acts or omissions of the Introducing Broker or its representatives, employees or other agents.

THE FOLLOWING ARBITRATION AGREEMENT SHOULD BE READ IN CONJUNCTION WITH THESE DISCLOSURES:

a. ALL PARTIES TO THIS AGREEMENT ARE GIVING UP THE RIGHT TO SUE EACH OTHER IN COURT, INCLUDING THE RIGHT TO A TRIAL BY JURY EXCEPT AS PROVIDED BY THE RULES OF THE ARBITRATION FORM IN WHICH A CLAIM IS FILED;
b. ARBITRATION AWARDS ARE GENERALLY FINAL AND BINDING; A PARTY'S ABILITY TO HAVE A COURT REVERSE OR MODIFY AN ARBITRATION AWARD IS VERY LIMITED.
c. THE ABILITY OF THE PARTIES TO OBTAIN DOCUMENTS, WITNESS STATEMENTS AND OTHER DISCOVERY IS GENERALLY MORE LIMITED IN ARBITRATION THAN IN COURT PROCEEDINGS;
d. THE ARBITRATORS DO NOT HAVE TO EXPLAIN THE REASON(S) FOR THEIR AWARD.
e. THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.
f. THE RULES OF SOME ARBITRATION FORUMS MAY IMPOSE TIME LIMITS FOR BRINGING A CLAIM IN ARBITRATION. IN SOME CASES, A CLAIM THAT IS INELIGIBLE FOR ARBITRATION MAY BE BROUGHT IN COURT.
g. THE RULES OF THE ARBITRATION FORUM IN WHICH THE CLAIM IS FILED, AND ANY AMENDMENTS THERETO, SHALL BE INCORPORATED INTO THIS AGREEMENT.

6. ARBITRATION AGREEMENT. ANY AND ALL CONTROVERSIES, DISPUTES OR CLAIMS BETWEEN THE UNDERSIGNED AND YOU, OR THE INTRODUCING BROKER, OR THE AGENTS, REPRESENTATIVES, EMPLOYEES, DIRECTORS, OFFICERS OR CONTROL PERSONS OF YOU OR THE INTRODUCING BROKER, ARISING OUT OF, IN CONNECTION WITH, FROM OR WITH RESPECT TO (a) ANY PROVISIONS OF OR THE VALIDITY OF THIS AGREEMENT OR ANY RELATED AGREEMENTS, (b) THE RELATIONSHIP OF THE PARTIES HERETO, OR (c) ANY CONTROVERSY ARISING OUT OF YOUR BUSINESS, THE INTRODUCING BROKER'S BUSINESS OR THE UNDERSIGNED'S ACCOUNTS, SHALL BE CONDUCTED PURSUANT TO THE CODE OF ARBITRATION PROCEDURE OF THE FINRA. ARBITRATION MUST BE COMMENCED BY SERVICE OF A WRITTEN DEMAND FOR ARBITRATION OR A WRITTEN NOTICE OF INTENTION TO ARBITRATE. THE DECISION AND AWARD OF THE ARBITRATOR (S) SHALL BE CONCLUSIVE AND BINDING UPON ALL PARTIES, AND ANY JUDGMENT UPON ANY AWARD RENDERED MAY BE ENTERED IN A COURT HAVING JURISDICTION THEREOF, AND NEITHER PARTY SHALL OPPOSE SUCH ENTRY.
No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; or (ii) the class is de-certified; or (iii) the customer is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.

7. Other Agreements; Option Transactions, Charges. The Customer agrees to be bound by the terms of Your Customer Account Agreement. If the Customer trades on margin or has short positions, the Customer agrees to be bound by the terms of Your Customer Margin and Short Account Agreement. If the Customer trades any options, the customer agrees to be bound by the terms of your Customer Option Agreement. If this is a joint Account, the Customers agree to be bound by Your Joint Account Agreement. The Customer understands that copies of these agreements are available from You and, to the extent applicable, are incorporated by reference herein. The terms of these other agreements are in addition to the provisions of this Agreement and any other written agreements between You and the Customer. You may charge the Customer Account maintenance fees, security transfer fees and account transfer fees, and other charges or fees as agreed between You and the Customer's Introducing Broker or as independently established by You.

8. Option Account. Assignment notices for option contracts are allocated among client short positions pursuant to a manual procedure which randomly selects from all client short option positions, including positions established on the day of assignment, those contracts which are subject to exercise. All American short option positions are subject to assignment at any time. A more detailed description of Your random allocation procedure is available upon request. In accordance with the Customer Option Agreement, if applicable, the Customer must promptly notify the Introducing Broker of any change in the Customer's objectives or financial situation. Individual options commissions and other related charges have been included in the Customer's Confirmation; however, a summary of this information will be made available to the Customer upon request. The customer must promptly advise the introducing broker of any material change in the customer's investment objectives or financial situation.

9. Miscellaneous. Customer's financial statement is available for personal inspection or will be mailed on the Customer's request. The headings of each section of the Agreement are descriptive only and do not modify or qualify any provision of this Agreement. Except as provided in this Agreement, no provision of this Agreement may be altered, modified or amended unless in writing signed by Your authorized representative. This Agreement and all provisions shall inure to the benefit of You and Your successors, Your assigns, the Customer's Introducing Broker, and all other persons specified in Paragraph 6 above. With respect to any free credit balance included on the Account statement, such funds are not segregated and may be used in Your business, subject to the limitations of 17 CFR Section 240.15c3-3 of the Securities Exchange Act of 1934. The Customer may receive these funds in the normal course of business following demand to You. You shall not be liable for losses caused directly or indirectly by any events beyond Your reasonable control. The costs and expenses of collection of the debit balance and any unpaid deficiency in the Account of the Customer with You, including but not limited to reasonable attorneys' fees and expenses, incurred and payable or paid by You shall be payable to You by the Customer. The estimated annual income, estimated current yield, and market value calculations are estimates only, and have been obtained or prepared from sources You consider to be reliable, but You make no assurance as to their accuracy.

**Penson Financial Services, Inc.**
1700 Pacific Ave., Suite 1400
Dallas, TX 75201
(214) 765-1100

# Statement of Account

F.O.I.A. Confidential Treatment Requested on Behalf of Penson Worldwide Inc. by Akin Gump Strauss Hauer & Feld LLP

| | Account Information | | Statement Period |
|---|---|---|---|
| CALL NOW INC | Account Number: ▓2454 | | March 1, 2010 to March 31, 2010 |

## Portfolio Positions

| Equities | Symbol/ Cusip | Account Type | Quantity | Current Price | Current Value | Percent of Acct Assets | Estimated Annual Income | Estimated Current Yield |
|---|---|---|---|---|---|---|---|---|
| CALL NOW | CLNW | Cash | 1,013,315 | 2.00 | 2,026,630.00 | 7.36% | | |
| CALL NOW **UnRestricted for 131004202** | CLNWDZ | Cash | 177,000 | 10.00 | 1,770,000.00 | 6.43% | | |
| CALL NOW *** RESTRICTED SHARES FOR CUSIP 131004202 | CLNWZZ | Cash | 132,856 | 10.00 | 1,328,560.00 | 4.83% | | |
| PENSON WORLDWIDE INC US7096001000 | PNSN | Margin | 500,922 | 10.07 | 5,044,284.54 | 18.33% | | |
| **Total: Equities** | | | | | **10,169,474.54** | **36.95%** | | |

| Fixed Income | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| RETAMA DEV CORP SP FAC SR1997B RETAMA PK RACETRACK PROJECT RATE: 8.000000  MATURITY: 09/01/33 | 76128PBA8 | Cash | 43,962,500 | 34.051 | 14,969,670.87 | 54.39% | 3,517,000.00 | 23.49% |
| CAMBRIDGE STUDENT HSG FING CO REV PASS THRU CTFS SER 2004C CUSTODY AT DTC RATE: 9.700000  MATURITY: 11/01/39 | 13251PAC7 | Margin | 2,193,782 | 55.095 | 1,208,664.19 | 4.39% | 212,796.85 | 17.61% |
| ESCAMBIA FLA HSG CORP HSG REV BEAUCLERC PROJ-SER A *** IN DEFAULT RATE: 7.125000  MATURITY: 07/01/03 | 296188AQ8 | Margin | 50,000 | 27.00 | 13,500.00 | 0.05% | | |
| ESCAMBIA FLA HSG CORP HSG REV BEAUCLERC PROJ-SER A TECHNICAL DEFAULT-FAILED TO COMPLY W/ C RATE: 7.500000  MATURITY: 07/01/06 | 296188AT2 | Margin | 60,000 | 27.00 | 16,200.00 | 0.06% | 4,500.00 | 27.78% |
| LEON CNTY FLA EDL FACS AUTH SOUTHGATE SUB SER B RATE: 7.625000  MATURITY: 09/01/28 | 52643EAY9 | Margin | 3,200,000 | 30.513 | 976,416.00 | 3.55% | | |

F.O.I.A. Confidential Treatment Requested on Behalf of Penson Worldwide Inc. by Akin Gump Strauss Hauer & Feld LLP

**Penson Financial Services, Inc.**
1700 Pacific Ave., Suite 1400
Dallas, TX 75201
(214) 765-1100

## Statement of Account

| Account Information | | Statement Period | |
|---|---|---|---|
| CALL NOW INC | | March 1, 2010 to March 31, 2010 | |
| Account Number: ▮2454 | | | |

### Portfolio Positions

| | Symbol/Cusip | Account Type | Quantity | Current Price | Current Value | Percent of Acct Assets | Estimated Annual Income | Estimated Current Yield |
|---|---|---|---|---|---|---|---|---|
| PERDIDO HSG CORP FLA HSG REV S ER A-LAMPLIGHTER PROJ DUE TO A N EVENT OF DEFAULT BDS WERE AC RATE: 6.850000   MATURITY: 11/01/03 | 71361WAE3 | Margin | 40,000 | 28.00 | 11,200.00 | 0.04% | 2,740.00 | 24.46% |
| RETAMA DEV CORP SP FAC SR1997A RETAMA PK RACETRACK PROJECT SER A RATE: 7.000000   MATURITY: 09/01/33 | 76128PAZ4 | Margin | 145,000 | 49.068 | 71,148.60 | 0.26% | 10,150.00 | 14.27% |
| TEXAS STUDENT HSG AUTH REV JR LIEN-STUDENT HSG-SER B-AUSTIN TX-PJ RATE: 6.750000   MATURITY: 01/01/33 CALL PRICE: 102.00   DATE: 01/01/12 | 882793AM4 | Margin | 2,000,000 | 4.228 | 84,560.00 | 0.31% | 135,000.00 | 159.65% |
| **Total: Fixed Income** | | | | | 17,351,359.66 | 63.05% | 3,882,186.85 | 22.37% |
| **Total: Portfolio Values** | | | | | 27,520,834.20 | 100.00 | 3,882,186.85 | 14.11% |
| Less: Margin Loan Balance | | Margin | | | (7,336,712.83) | -26.66% | | |
| **Total: Account Net Assets/Equity** | | | | | 20,184,121.37 | 73.34% | 3,882,186.85 | 19.23% |

Account value and totals are based only on priced securities. We may be unable to price all securities in your account. For municipal securities and some other fixed income securities, prices are approximate (not actual market bids) and are provided only as a general guide. They do not necessarily reflect actual market prices. For current prices, please contact your financial consultant.

PWI-SEC-015017

ACCOUNTS CARRIED BY PENSON FINANCIAL SERVICES, INC.   • MEMBER FINRA, NYSE AND SIPC

Page 3 of 6

**Penson Financial Services, Inc.**
1700 Pacific Ave., Suite 1400
Dallas, TX 75201
(214) 765-1100

## Statement of Account

| | | Account Information | | Statement Period | |
|---|---|---|---|---|---|
| CALL NOW INC | | Account Number: ▇2454 | | March 1, 2010 to March 31, 2010 | |

### Account Activity

**Cash Account**

| Entry/Trade Date | Account Type | Transaction | Quantity | Description | Price | Amount |
|---|---|---|---|---|---|---|
| | Cash | | | OPENING BALANCE | | 0.00 |
| 03/03/10 | Cash | Journal | 177,000 | CALL NOW<br>**UnRestricted for 131004202**<br>TRANSFER FROM ▇2041 1 | | |
| 03/30/10 | Cash | Journal | | Q1 Custody Fee | | (15.00) |
| 03/31/10 | Cash | Journal | | *FROM MARGIN* | | 15.00 |
| 03/31/10 | Cash | Received | 721,463 | CALL NOW<br>4087 3/19/04 | | |

**Total: Cash Account Balance** — 0.00

**Margin Account**

| Entry/Trade Date | Account Type | Transaction | Quantity | Description | Price | Amount |
|---|---|---|---|---|---|---|
| | Margin | | | OPENING BALANCE | | (13,913,644.61) |
| 03/03/10 | Margin | Journal | | DOMESTIC WIRE FEE | | (15.00) |
| 03/03/10 | Margin | Journal | -93,203 | PENSON WORLDWIDE INC<br>TO ▇2041<br>US7096001000 | | |
| 03/03/10 | Margin | Journal | | PROCEEDS OF LOAN | | 13,922,000.00 |
| 03/03/10 | Margin | Journal | | W/T ▇2454 | | (1,802,500.00) |
| 03/08/10 | Margin | Journal | | TRANSFER A/O 3/5/10 | | (3,709,300.00) |
| 03/29/10 | Margin | Interest Non-Tax | | RETAMA DEV CORP SP FAC SR1997A<br>RETAMA PK RACETRACK PROJECT<br>SER A | | 10,336.08 |
| 03/31/10 | Margin | Debit Interest | | 7.45000%02/27-03/31 $6014543 | | (41,074.30) |
| 03/31/10 | Margin | Journal | | *TO CASH* | | (15.00) |
| 03/31/10 | Margin | Journal | 2,193,782 | CAMBRIDGE STUDENT HSG FING CO<br>REV PASS THRU CTFS SER 2004C<br>CUSTODY AT DTC<br>FR ▇2041 P&S AGREEMENT | | |
| 03/31/10 | Margin | Journal | 3,200,000 | LEON CNTY FLA EDL FACS AUTH<br>SOUTHGATE SUB SER B<br>FR ▇2041 P&S AGREEMENT | | |

F.O.I.A. Confidential Treatment Requested on Behalf of Penson Worldwide Inc. by Akin Gump Strauss Hauer & Feld LLP

PWI-SEC-015018

**Penson Financial Services, Inc.**
1700 Pacific Ave., Suite 1400
Dallas, TX 75201
(214) 765-1100

## Statement of Account

| | CALL NOW INC | | | Account Information | | Statement Period | |
|---|---|---|---|---|---|---|---|
| | | | | Account Number: ▇2454 | | March 1, 2010 to March 31, 2010 | |

### Account Activity

| Entry/Trade Date | Account Type | Transaction | Quantity | Description | Price | Amount |
|---|---|---|---|---|---|---|
| 03/31/10 | Margin | Journal | -93,203 | PENSON WORLDWIDE INC<br>TO ▇2041 P&S AGREEMENT<br>US7096001000 | | |
| 03/31/10 | Margin | Journal | 93,203 | PENSON WORLDWIDE INC<br>REVERSE JOURNAL<br>US7096001000 | | |
| 03/31/10 | Margin | Journal | -406,797 | PENSON WORLDWIDE INC<br>TO ▇2041 P&S AGREEMENT<br>US7096001000 | | |
| 03/31/10 | Margin | Journal | | TO ▇2041 P&S AGREEMENT | | (1,802,500.00) |
| **Total: Margin Account Balance** | | | | | | **(7,336,712.83)** |

F.O.I.A. Confidential Treatment Requested on Behalf of Penson Worldwide Inc. by Akin Gump Strauss Hauer & Feld LLP

PWI-SEC-015019

ACCOUNTS CARRIED BY PENSON FINANCIAL SERVICES, INC.   • MEMBER FINRA, NYSE AND SIPC

**Penson Financial Services, Inc.**
1700 Pacific Ave., Suite 1400
Dallas, TX 75201
(214) 765-1100

# Statement of Account

| | Account Information | | Statement Period |
|---|---|---|---|
| CALL NOW INC | Account Number: | ▆2454 | March 1, 2010 to March 31, 2010 |

*Settled Trades Summary:*

| | | | |
|---|---|---|---|
| TOTAL PURCHASED (USD): | 0.00 | TOTAL SHARES PURCHASED: | 0.00 |
| TOTAL SOLD (USD): | 0.00 | TOTAL SHARES SOLD: | 0.00 |

A copy of the Penson Financial Services, Inc. (PFSI) Statement of Financial Condition at December 31, 2009 is available on the website at www.penson.com. A copy may also be obtained at no cost by calling 1-888-321-6162. At December 31, 2009, PFSI had net capital of $94,738,218, and was $70,416,624 in excess of its required net capital of $24,321,594. At February 28, 2010, PFSI had net capital of $108,493,547 and was $75,166,081 in excess of its required netcapital of $33,327,466.

It is your responsibility to review your confirmations and statements upon receipt or when they are made available electronically. Transactions shall be conclusive and binding upon you if no written objection is made to PFSI (within 10 days after available). In all cases PFSI reserves the right to determine the validity of any objection to the information contained in the account statement.

Securities Investor Protection Corporation ("SIPC") does not cover commodity contracts and options on futures. For information about SIPC or to request a SIPC brochure, please see www.sipc.org or contact SIPC at (202) 371-8300.

DPP and REIT securities are generally illiquid and the estimated value of these securities may not be realized upon liquidation of the security. The value of the security will differ from the purchase price. In the event valuations are provided, they will be based upon estimated values obtained from the issuer's annual report. However, in some cases accurate valuation information is not available and will not be provided.

FINRA Rule 2340 requires that we advise you to promptly report any inaccuracy or discrepancy in your account to your brokerage firm and clearing firm (where these are different firms) and to re-confirm any oral communications in writing.
http://www.finra.org/web/groups/rules_regs/documents/notice_to_members/p018130.pdf

When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day your payment is received, and you will not receive your check back from your financial institution. Please contact your broker if you have questions about electronic check collection or do not want your payments collected electronically.

Pursuant to SEC Rule 606, Penson Financial Services, Inc. is required to make publicly available a quarterly report with regard to its routing of non-directed orders. For the purpose of this Rule, we have entered into an agreement with Quantum5 Market Surveillance (a Division of S3 Matching Technologies) to disclose all required information pertaining to this rule. This information can be accessed on the internet at: ftp://public.s3.com/11ac1-6/pfsi, or a written copy will be furnished at no cost upon request via telephone to 214-765-1009 or email to cs@penson.com.

SEC Rule 606(b) requires a broker-dealer to disclose to its customers, upon request, "the identity of the venue to which the customer's orders were routed for execution in the six months prior to the request, whether the orders were directed orders or non-directed orders, and the time of the transactions, if any, that resulted from such orders."

FINRA REQUIRES THAT WE NOTIFY YOU IN WRITING OF THE AVAILABILITY OF AN INVESTOR BROCHURE THAT INCLUDES INFORMATION DESCRIBING THE FINRA'S PUBLIC DISCLOSURE PROGRAM ('PROGRAM'). TO OBTAIN A BROCHURE OR MORE INFORMATION ABOUT THE PROGRAM OR FINRA, CONTACT THE FINRA PROGRAM HOTLINE AT (800) 289-9999 OR ACCESS THE FINRA WEB SITE AT www.finrabrokercheck.com

\* End of Statement \*

F.O.I.A. Confidential Treatment Requested on Behalf of Penson Worldwide Inc. by Akin Gump Strauss Hauer & Feld LLP

PWI-SEC-015020