# EXHIBIT 13

## NASD REGULATION, INC.
## LETTER OF ACCEPTANCE, WAIVER AND CONSENT
## NO. C07980023-AWC

TO: Department of Enforcement
NASD Regulation, Inc.

RE: Howe, Solomon & Hall, Inc.
Member
CRD No. 13386
100 S.E. 2nd Street, No. 4200
Miami, Florida 33131

Christopher J. Hall
Registered Principal
CRD No. 1051581

Miami, Florida 33133



DEC 1 5 1998

DISTRICT NO. 7

Pursuant to Rule 9216 of the NASD Code of Procedure, Howe, Solomon & Hall, Inc. ("HSH") and Christopher J. Hall submit this Letter of Acceptance, Waiver and Consent ("AWC") for the purpose of proposing a settlement of the alleged rule violations described in Part II below. This AWC is submitted on the condition that, if accepted, NASD Regulation, Inc. will not bring any future actions against us based on the same factual findings.

We understand that:

1. Submission of this AWC is voluntary and will not resolve this matter unless and until it has been reviewed and accepted by both the Department of Enforcement and the National Adjudicatory Council ("NAC") of NASD Regulation, Inc.;

2. If this AWC is not accepted, its submission will not be used as evidence to prove any of the allegations against us;

3. If accepted:

   a) this AWC will become part of our respective permanent disciplinary records and may be considered in any future actions brought by NASD Regulation, Inc. against us;

   b) this AWC will be available through NASD Regulation, Inc.'s public disclosure program to public inquiries about our respective disciplinary histories;



PX 122

Page 2

    c)    NASD Regulation, Inc. may make a public announcement concerning this agreement and the subject matter thereof in accordance with NASD Rule 8310 and IM-8310-2; and

    d)    We may not take any action or make or permit to be made any public statement, including in regulatory filings or otherwise, denying, directly or indirectly, any allegation in this AWC or create the impression that the AWC is without factual basis. Nothing in this provision affects our testimonial obligations or right to take legal positions in litigation in which the NASD is not a party.

We also understand that our experience in the securities industry and disciplinary history may be factors which will be considered in deciding whether to accept this AWC. That experience and history are as follows:

HSH has been a member of the National Association of Securities Dealers, Inc. (the "Association") since 1983. HSH has a disciplinary history. On September 27, 1994, HSH was named in a complaint (No. C07940058) brought by the District Business Conduct Committee for District No. 7. (Christopher Hall was also named as respondent.) The complaint alleged that HSH and Hall violated MSRB Rules G-27 and G-30 in that HSH, acting through Hall, effected principal sales of various municipal bonds with public customers at prices that were excessively marked-up. In addition, they were charged with failing to establish or maintain adequate written supervisory procedures pertaining to the pricing of municipal securities. In a Decision dated October 24, 1995, HSH and Hall were found to have committed the violations alleged in the complaint. HSH and Hall were censured and fined $30,000, jointly and severally. HSH was also ordered to pay restitution to customers totaling $67,936.40.

On May 29, 1998, the S.E.C. announced that it had instituted and simultaneously settled administrative and cease and desist proceedings against HSH and Hall, pursuant to Sections 15(B), 19(H) and 21C of the Securities Exchange Act of 1934. The Order instituting the proceedings finds from September 7, 1994 to October 12, 1994, HSH and Hall willfully violated the federal securities laws by charging excessive markups on certain municipal securities that it sold to its customers. The order further found that Hall willfully aided and abetted and caused HSH's violations. In the order, the S.E.C. accepts HSH's and Hall's Offer of Settlement in which, while neither admitting nor denying the allegations, HSH agrees to cease and desist from committing or causing any violations and any future violations of Section 15(B)(c)(1) of the Exchange Act and Rules G-17 and G-30 promulgated by the Municipal Securities Rulemaking Board, to pay an administrative penalty of $25,000, and to pay disgorgement and prejudgment interest of $135,412. Hall agrees in the Offer to a censure and to cease and desist

Page 3

from committing or causing any violations and any future violations of Section 15B(C)(1) of the Exchange Act and of MSRB Rules G-17 and G-30.

Christopher J. Hall entered the securities industry in May 1982 with Stoever, Glass & Co., Inc., which registered him in December 1982 as a Municipal Securities Representative. In January 1984, Hall also registered as a General Securities Representative. In September 1984, Hall went to work for Russell & Co. until February 1985. At that time, Hall joined Firstmark Securities, Inc. Finally, in November 1985, Hall became employed by HSH. At HSH, Hall registered as a Municipal Securities Principal, a General Securities Representative, and a Financial and Operations Principal.

Hall also has a disciplinary history, which is outlined above in connection with HSH.

## I.

## WAIVER OF PROCEDURAL RIGHTS

We specifically and voluntarily waive the following rights which are granted us under NASD Regulation, Inc.'s Procedural Rules:

1. To have a Formal Complaint issued specifying the allegations against us;

2. To be notified of the Formal Complaint and have the opportunity to answer the allegations in writing;

3. To defend against the allegations in a disciplinary hearing before a hearing panel, to have a written record of the hearing made and to have a written decision issued;

4. To appeal any such decision to the NAC, and then to the U.S. Securities and Exchange Commission and a U.S. Court of Appeals.

Further, we specifically and voluntarily waive any right to claim bias or prejudgment of the General Counsel, the NAC, or any member of the NAC, in connection with such person's or body's participation in discussions regarding the terms and conditions of this AWC, or other consideration of this AWC, including acceptance or rejection of this AWC.

We further specifically and voluntarily waive any right to claim that a person violated the ex parte prohibitions of Rule 9143 or the separation of functions prohibitions of Rule 9144, in connection with such person's or body's participation in discussions regarding the terms and conditions of this AWC, or other consideration of this AWC, including its acceptance or rejection.

Page 4

## II.

## ACCEPTANCE AND CONSENT

A. We hereby accept and consent, without admitting or denying the alleged violations, to the entry of the following findings by NASD Regulation, Inc.:

In 1996 HSH had a minimum net capital requirement of $100,000. At the end of each month from April through and including September 1996 (the "Review Period"), HSH reported having net capital in excess of its minimum requirement. In fact, however, for each month during the Review Period HSH included among the firm's allowable assets certain items that were not properly non-allowable. As a result, HSH actually had insufficient minimum net capital for each month from April through September 1996.

The items that HSH wrongfully counted as allowable assets fall into two categories: (1) defaulted municipal bonds, and (2) inaccurate or disputed accounts receivable. With regard to the former, HSH held in its inventory at the end of each month during the Review Period certain municipal bonds that had previously defaulted. Some of those bonds had ceased making interest payments entirely. Other of those bonds had been restructured by HSH, assigned a new CUSIP number, and were making interest payments. Significantly, however, none of those bonds – including the restructured bonds – could properly be valued as an allowable asset (and therefore attributable to HSH's capital) because they failed the "presumed marketability" test.

HSH also included in its net capital computations as an allowable asset each month during the Review Period revenue (in the form of customer debits) generated from the purported sales of certain municipal bonds effected by Hall from HSH's inventory to various customers and/or other broker-dealers. The municipal bonds that were the subject of these "sales" were all in default, and therefore, as noted above, could not be considered as allowable assets. By selling them, however, HSH was able to count the proceeds from the "sales" towards the calculation of the firm's net capital. Shortly after computing each month's net capital, however, certain purported sales were canceled. The securities were returned to HSH's inventory and the customer debits were reversed. This constitutes "parking," *i.e.*, these "sales" were all fictitious trades designed to overstate HSH's net capital so as to enable the firm to continue in business in ostensible compliance with the net capital rule.

The miscalculation by HSH of its net capital for each month during the Review Period, and the "parking" by Hall of the municipal securities, as described above, constitute separate and distinct violations of S.E.C. Rules 15c3-1 and 17a-3, and therefore Conduct Rule 2110.

Page 5

B.  We also consent to the imposition, at a maximum, of the following sanctions:

    On Hall:

- a censure;

- a fine of $25,000; and

- a two-year suspension in all capacities and a permanent bar as a principal (with no right to re-apply). Mr. Hall has the right to continue as a passive investor in the firm, even during the term of the suspension. If it is ever determined that the scope of Mr. Hall's involvement with the firm during the term of the suspension ever goes beyond that, however (and the independent consultant discussed below will specifically be charged to check on that), he shall immediately and without notice be permanently barred in all capacities.

    On HSH:

- a censure;

- a fine of $25,000

- the requirement that it retain an independent consulting firm ("Independent Consultant") that is mutually agreeable to both HSH and NASD Regulation. The Independent Consultant shall be retained by HSH for a period of one year following the date the NAC accepts this AWC. Initially, the Independent Consultant shall conduct a review of HSH's compliance and written supervisory procedures -- in particular, but not limited to, those procedures relating to the monthly calculation of its net capital -- to determine their adequacy and consistency with applicable laws and regulations. In addition, the Independent Consultant shall review the activities of Mr. Hall to ensure that, during the term of his two-year suspension, he does not assume any role with HSH beyond that of passive investor. HSH shall have a reasonable amount of time within which to procure the Independent Consultant, however, the Independent Consultant will be retained, and the initial review will commence, no later than 60 days from the date the NAC accepts this AWC.

    The initial review itself shall be completed no later than 120 days from the date the NAC accepts this AWC. Upon completion of the initial review, the Independent Consultant shall prepare a written report, a copy of which shall be provided to HSH and to the staff of NASD Regulation's District 7 office. HSH, within 30 days of its receipt of the report, shall, in turn, report in writing to the District 7 staff any

Page 6

        modifications made to its compliance or written supervisory procedures as a result of recommendations by the Independent Consultant. In the event HSH declines to adopt any recommendations made by the Independent Consultant, HSH shall include in its written report the reason(s) therefor.

        At the conclusion of the one-year period, the Independent Consultant shall conduct a follow-up review and prepare a follow-up report addressing HSH's compliance and written supervisory procedures. This report shall be provided to HSH and the District 7 staff. As with the initial report, HSH shall provide the District 7 staff with its own written report 30 days after the follow-up report by the Independent Consultant providing the status of implementation of any recommendations made by the Independent Consultant.

        All fees, expenses and costs associated with the Independent Consultant, including the review and the preparation of reports, shall be paid by HSH. HSH shall cooperate fully with the Independent Consultant, including obtaining the full cooperation and assistance of its employees or other persons under its control.

### III.

### CORRECTIVE ACTION AND/OR OTHER MATTERS

1. We understand that we may attach a Corrective Action Statement to this AWC which is our statement of demonstrable corrective steps taken to prevent future misconduct. We may not deny the charges or make any statement that is inconsistent with the AWC in this Statement. This Statement does not constitute factual or legal findings by NASD Regulation, Inc. nor does it reflect the views of NASD Regulation, Inc. or its staff.

2. We agree to pay any monetary sanctions imposed on us in accordance with Section II.B, upon notice that this AWC has been accepted and that such payments are due and payable, and we have attached the election form showing the method by which we propose to pay any fine imposed.

3. Mr. Hall understands that if he is suspended or barred from association with any NASD member, he becomes subject to a statutory disqualification as that term is defined in Section 3(a)(39) of the Securities Exchange Act of 1934, as amended. Accordingly, subject to the qualification that Hall may continue to be a shareholder of HSH, he may not be associated with any NASD member in any capacity, including clerical or ministerial functions, during the period of the suspension. (*See* NASD Manual, Procedural Rule 8310 and IM-8310-1.)

Page 7

We certify that we have read and understand all of the provisions of this AWC and have been given full opportunity to ask questions about it, and that no offer, threat, inducement, or promise of any kind has been made to induce us to submit the AWC.

Howe, Solomon & Hall, Inc.

By: _____

_PRESIDENT_
Its

12/10/98
Date

Christopher J. Hall

_____
(signature)

12-10-98
Date

_____
Counsel for Howe, Solomon & Hall, Inc.
and Christopher J. Hall  As to formally

Accepted by NASD Regulation, Inc.:

_____

1/14/99
Date