# EXHIBIT 16

```
                    UNITED STATES OF AMERICA
                            before the
                 SECURITIES AND EXCHANGE COMMISSION
```

| | |
|---|---|
| In the Matter of | |
| | OFFER OF SETTLEMENT OF |
| HOWE, SOLOMON & HALL, INC. | HOWE, SOLOMON & HALL, INC. |
| AND CHRISTOPHER J. HALL | AND CHRISTOPHER J. HALL |
| Respondents. | |

### I.

Respondents, Howe, Solomon & Hall, Inc. ("HSH") and Christopher J. Hall ("Hall") (collectively "Respondents"), pursuant to Rule 240(a) of the Rules of Practice of the Securities and Exchange Commission ("Commission"), submit this Offer of Settlement ("Offer") for the purpose of settlement of this proceeding brought pursuant to Sections 15(b), 19(h), and 21C of the Securities Exchange Act of 1934 ("Exchange Act").

### II.

Except as provided in Section V., below:

A. This Offer is submitted only for the purpose of settlement of this proceeding, with the express understanding that it will not be used in any way in said proceeding unless the Offer is accepted by the Commission as hereinafter set forth; and

B. If this Offer is not accepted by the Commission, the Offer is withdrawn without prejudice to Respondents and neither the Offer, nor any part of it, shall become a part of the record, or referred to, in this or any other proceeding.

### III.

On the basis of the foregoing, Respondents hereby:

A. Admit the jurisdiction of the Commission over them and over the matters set forth in the Order Instituting Public Administrative and Cease-and-Desist Proceedings Pursuant to Sections 15(b), 19(h), and 21C, Making Findings and Imposing Remedial Sanctions and Cease-and-Desist Order ("Order"); and

B. Solely for the purpose of these proceedings and any other proceedings brought by or on behalf of the Commission or in which the Commission is a party, prior to a hearing pursuant to the Commission's Rules of Practice, 17 C.F.R. § 201.1 et seq., and without admitting or denying the findings contained in the Order, except with respect to Section III.A., above, and Sections III.B.1.

PX 171

and III.B.2., below, which are admitted, consent to the entry of the Order by the Commission containing the following findings, sanctions, and cease-and-desist order set forth below:

1.  HSH has been registered with the Commission as a broker-dealer since June 1983.

2.  At all relevant times, Hall was the Chief Financial Officer, the registered financial operations principal and a fifty percent shareholder of HSH.

### HSH's Restructuring of Defaulted Municipal Bonds

3.  HSH operates primarily as a municipal securities broker-dealer. Approximately fifty percent (50%) of HSH's business relates to the purchase and sale of non-rated municipal bonds. Of that fifty percent, approximately ten percent (10%) consists of transactions involving defaulted or technically defaulted bonds.[1] HSH researches and performs due diligence of municipal bond issues that are at or near the point of technical default to determine their restructuring potential.

### Duval County, Florida Housing Authority Multifamily Magnolia Arms Apartment Bonds

4.  The municipal bonds at issue in this matter (the "Bonds") were issued on August 7, 1987 by the Duval County, Florida Housing Finance Authority (the "Authority"). The Bonds were issued to finance the acquisition, rehabilitation and permanent financing of a multifamily residential rental housing development located in Jacksonville, Florida, known as Magnolia Arms Apartment Project (the "Project"). Through an Indenture of Trust ("Indenture"), revenues from the Project are used to finance repayment of the Bonds.

### Financial Condition of the Bond Issue and Underlying Project Prior to Restructuring

5.  The Bonds originally carried a 9.5% coupon requiring semi-annual interest payments on February 15 and August 15 of each year. In December 1993, the Trustee for the Indenture ("Trustee") declared an event of default and advised the bondholders that no further interest payments would be made from revenues because the Project would be generating insufficient revenues. Indeed, the February and August 15, 1994, interest payments were made to bondholders by drawing on a then existing letter of credit.

---

[1] Generally, technical default denotes that some event has occurred which causes non-compliance with a trust indenture agreement (i.e., failure to make coupon payments). A technical default may be monetary or non-monetary.

### HSH's Restructuring of the Duval County Bonds

6.  As a result of the above-described financial predicament and the declaration of technical default, the Bonds traded at a substantial discount. Following a preliminary analysis of the feasibility of restructuring the Bonds, on September 7, 1994 HSH purchased 5,460 of the Bonds for $51 per bond (face par value $5,460,000). HSH's purchase represented 66.3% of the then outstanding Bonds.

7.  Hall and others at HSH performed a more complete financial analysis of the Project and determined that the Bonds could be restructured and support a 5% coupon with semi-annual payments. As part of a successful restructuring, HSH needed to obtain the cooperation of the Trustee and secure the consent of the outstanding bondholders to the restructuring terms.

8.  Among other things, HSH: (a) negotiated with the developer of the Magnolia Arms Apartments to spend an additional $210,000 on the project; and (b) spent at least $45,000 and expended approximately $112,000 worth of labor hours restructuring the bonds. [2]

9.  Prior to the restructuring of the Bonds, the debt service expense for 1996 would have been $735,360. Subsequent to the restructuring, with the lower coupon, the 1996 debt service expense was $337,625. As a result of HSH's actions, bankruptcy of a municipal bond issue was avoided and the apartment complex was enhanced, although the coupon payments were reduced.

### Excessive Mark-Ups

10. From September 7, 1994 through October 12, 1994, HSH sold 4,520 of the Bonds to a small group of sophisticated investors, who for the most part were pre-existing clients of HSH, at prices between $61 and $61.46 per Bond (face par value $4,520,000). Hall was personally responsible for setting the sale price. Based on this price, the Commission finds that HSH charged undisclosed excessive markups between 19% and 21% to its customers. [3]

---

[2] The expense items described in paragraph 8 do not reflect all expenses HSH incurred in the restructuring.

[3] In calculating the markups charged by HSH, HSH's purchase price of $51 per bond was determined to be the fair market value of the securities at time of subsequent sale in light of the short passage of time (approximately 36 days from first until final sale), and the lack of any significant intervening event.

3

## Legal Findings

11. The Commission finds that HSH charged undisclosed excessive markups in the amount of $117,417. The amount of excessive markups reflects the difference between HSH's cost to acquire the Bonds in question and the profits realized on the sale of such bonds, minus allowable costs, expenses and markups.

12. From September 7 to October 12, 1994, HSH willfully violated Section 15B(c)(1) of the Exchange Act and Rules G-17 and G-30 promulgated by the Municipal Securities Rulemaking Board, in that it, through the use of the mails or the means and instrumentalities of interstate commerce, taking into consideration all relevant factors, sold municipal securities from HSH's own account to customers at aggregate prices (including markups) that were unfair and unreasonable, as more fully described in paragraphs III.1. - III.10. herein.

13. From September 7 to October 12, 1994, Hall willfully aided and abetted and caused of HSH's violations of Section 15B(c)(1) of the Exchange Act and Rules G-17 and G-30 promulgated by the Municipal Securities Rulemaking Board in that HSH, aided and abetted and caused by Hall, through the use of the mails or the means and instrumentalities of interstate commerce, taking into consideration all relevant factors, sold municipal securities from HSH's own account to customers at aggregate prices (including markups) that were unfair and unreasonable, as more fully described in paragraphs III.1. - III.10. herein.

**IV.**

Respondents consent to the entry of an Order by the Commission imposing the following sanctions:

A. an order directing Respondent HSH to cease and desist from committing or causing any violation or future violation of Section 15B(c)(1) of the Exchange Act and Rules G-17 and G-30 promulgated by the Municipal Securities Rulemaking Board;

B. an order directing Respondent Hall to cease and desist from committing or causing any violation or future violation by a broker-dealer of Section 15B(c)(1) of the Exchange Act and Rules G-17 and G-30 promulgated by the Municipal Securities Rulemaking Board;

C. an order censuring Respondent Hall;

D. an order directing Respondent HSH, within fifteen (15) days from the entry of the Order, pursuant to Section 21B of the Exchange Act, to pay a civil penalty in the amount of twenty-five thousand dollars ($25,000.00) to the United States Treasury. Such payment shall be: (1) made by United States postal money order, certified check, bank cashier's check, or bank money order; (2)

made payable to the Securities and Exchange Commission; (3) transmitted to the Comptroller, Securities and Exchange Commission, Mail Stop 0-3, 450 Fifth Street, N.W., Washington, D.C. 20549; and (4) submitted under cover letter that identifies HSH and Hall as Respondents in this proceeding, and the file number of these proceedings (_____), a copy of which cover letter and money order or check shall be sent to Frederick M. Lehrer, Esq., Securities and Exchange Commission, Southeast Regional Office, 1401 Brickell Avenue, Suite 200, Miami, Florida 33131; and

    E. an order directing that Respondent HSH, within fifteen (15) days from the entry of the Order, pursuant to Sections 21B(e) and 21C of the Exchange Act, shall pay disgorgement and prejudgment interest in the amount of $135,412 to the United States Treasury. Such payment shall be: (1) made by United States postal money order, certified check, bank cashier's check, or bank money order; (2) made payable to the Securities and Exchange Commission; (3) transmitted to the Comptroller, Securities and Exchange Commission, Mail Stop 0-3, 450 Fifth Street, N.W., Washington, D.C. 20549; and (4) submitted under cover letter that identifies HSH and Hall as Respondents in this proceeding, and the file number of these proceedings (_____), a copy of which cover letter and money order or check shall be sent to Frederick M. Lehrer, Esq., Securities and Exchange Commission, Southeast Regional Office, 1401 Brickell Avenue, Suite 200, Miami, Florida 33131.

**V.**

    By submitting this Offer, Respondents hereby acknowledge their waiver of those rights specified in Rule 240(c)(4) and (5) of the Commission's Rules of Practice. Respondents also waive service of the Order.

**VI.**

    Respondents understand and agree to comply with the Commission's policy "not to permit a defendant or respondent to consent to a judgment or order that imposes a sanction while denying the allegations in the complaint or order for proceedings" (17 C.F.R. §202.5(e)). In compliance with this policy, Respondents agree: (i) not to take any action or to make or permit to be made any public statement denying, directly or indirectly, any allegation in the Order or creating the impression that the Order is without factual basis; and (ii) that upon the filing of this Offer, Respondents hereby withdraw any papers filed in this proceeding to the extent that they deny any allegation in the Order. If Respondents breach this agreement, the Division of Enforcement may petition the Commission to vacate the Order and restore this proceeding to its active docket. Nothing in this provision affects Respondents' testimonial obligations or right to take legal positions in litigation in which the Commission is not a party.

## VII.

Respondents state that they have read and understood the foregoing Offer, that this Offer is made voluntarily, and that no promises, offers, threats, or inducements of any kind or nature whatsoever have been made by the Commission or any member, officer, employee, agent, or representative of the Commission in consideration of this Offer or otherwise to induce them to submit to this Offer.

Respectfully submitted,

Date: 5/14/98

By: _____
Ronald Solomon, President
Howe, Solomon & Hall, Inc.

Date: 5/14/98

_____
Christopher J. Hall,
Individually

STATE OF FLORIDA )
                 ) ss.
COUNTY OF        )

The foregoing instrument was acknowledged before me this 14th day of May, 1998, by Christopher J. Hall, who is personally known to me or who has produced a Florida driver's license as identification and who did take an oath.

_____
Notary Public
State of Florida
Commission Number      : _____
Commission Expiration  : _____

M. R. CHAMPON
MY COMMISSION # CC 462149
EXPIRES: May 10, 1999
Bonded Thru Notary Public Underwriters

The foregoing instrument was acknowledged before me this 14th day of May, 1998, by Ronald Solomon, who is personally known to me or who has produced a Florida driver's license as identification and who did take an oath.

_____
Notary Public
State of Florida
Commission Number      : _____
Commission Expiration  : _____

M. R. CHAMPON
MY COMMISSION # CC 462149
EXPIRES: May 10, 1999
Bonded Thru Notary Public Underwriters

Approved as to form:

_____
Mark F. Raymond, Esquire
Tew & Beasley, L.L.P.
201 South Biscayne Boulevard, Suite 2600
Miami, Florida 33131

**CORPORATE RESOLUTION**

I, Ronald Solomon, President of Howe, Solomon & Hall, Inc., hereby certify that the following resolution was duly enacted at a meeting of the Board of Directors of Howe, Solomon & Hall, Inc. on 5/14/98.

Resolved, that Ronald Solomon be and hereby is authorized to execute the attached Offer of Settlement on behalf of Howe, Solomon & Hall, Inc.

By: _____
Ronald Solomon
President
Howe, Solomon & Hall, Inc.