# EXHIBIT 18

UNITED STATES OF AMERICA
before the
SECURITIES AND EXCHANGE COMMISSION

SECURITIES & EXCHANGE COMM.
MAILED FOR SERVICE

MAY 29 1998

CTFD. NO. 8053 555

Securities Exchange Act of 1934
Release No. 40038 / May 28, 1998

Administrative Proceeding
File No. 3-9613

| | |
|---|---|
| In the Matter of<br><br>HOWE, SOLOMON AND HALL AND CHRISTOPHER J. HALL<br><br>Respondents. | ORDER INSTITUTING PUBLIC ADMINISTRATIVE AND CEASE-AND-DESIST PROCEEDINGS PURSUANT TO SECTIONS 15(b), 19(h) AND 21C OF THE SECURITIES EXCHANGE ACT OF 1934, MAKING FINDINGS AND IMPOSING REMEDIAL SANCTIONS AND CEASE-AND-DESIST ORDER |

I.

The Securities and Exchange Commission deems it appropriate and in the public interest that public administrative and cease-and-desist proceedings be instituted against Howe, Solomon & Hall ("HSH") and Christopher J. Hall ("Hall") (collectively "Respondents"), pursuant to Sections 15(b), 19(h), and 21C of the Securities Exchange Act of 1934 ("Exchange Act").

In anticipation of the institution of these proceedings, Respondents have submitted an Offer of Settlement ("Offer) which the Commission has determined to accept. Solely for the purpose of these proceedings and any other proceeding brought by or on behalf of the Commission or in which the Commission is a party, and without admitting or denying any of the findings contained herein, except as to the jurisdiction of the Commission over them and over the subject matter of these proceedings, and as to the findings contained in Section II., paragraphs A. and B., which are admitted, Respondents consent to the entry by the Commission of this Order Instituting Public Administrative and Cease-and-Desist Proceedings Pursuant to Sections 15(b), 19(h), and 21C of the Exchange Act, Making Findings and Imposing Remedial Sanctions and Cease-and-Desist Order ("Order").

Accordingly, IT IS HEREBY ORDERED that proceedings against Respondents hereby are instituted.

PX
173

II.

On the basis of this Order and the Offer, the Commission finds that:

A. HSH has been registered with the Commission as a broker-dealer since June 1983.

B. At all relevant times, Hall was the Chief Financial Officer, the registered financial operations principal and a fifty percent shareholder of HSH.

**HSH's Restructuring of Defaulted Municipal Bonds**

C. HSH operates primarily as a municipal securities broker-dealer. Approximately fifty percent (50%) of HSH's business relates to the purchase and sale of non-rated municipal bonds. Of that fifty percent, approximately ten percent (10%) consists of transactions involving defaulted or technically defaulted bonds.[1] HSH researches and performs due diligence of municipal bond issues that are at or near the point of technical default to determine their restructuring potential.

**Duval County, Florida Housing Authority Multifamily Magnolia Arms Apartment Bonds**

D. The municipal bonds at issue in this matter (the "Bonds") were issued on August 7, 1987 by the Duval County, Florida Housing Finance Authority (the "Authority"). The Bonds were issued to finance the acquisition, rehabilitation and permanent financing of a multifamily residential rental housing development located in Jacksonville, Florida, known as Magnolia Arms Apartment Project (the "Project"). Through an Indenture of Trust ("Indenture"), revenues from the Project are used to finance repayment of the Bonds.

---

1 Generally, technical default denotes that some event has occurred which causes non-compliance with a trust indenture agreement (i.e. failure to make coupon payments). A technical default may be monetary or non-monetary.

## Financial Condition of the Bond Issue and Underlying Project Prior to Restructuring

E. The Bonds originally carried a 9.5% coupon requiring semi-annual interest payments on February 15 and August 15 of each year. In December 1993, the Trustee for the Indenture ("Trustee") declared an event of default and advised the bondholders that no further interest payments would be made from revenues because the Project would be generating insufficient revenues. Indeed, the February and August 15, 1994, interest payments were made to bondholders by drawing on a then existing letter of credit.

## HSH's Restructuring of the Duval County Bonds

F. As a result of the above-described financial predicament and the declaration of technical default, the Bonds traded at a substantial discount. Following a preliminary analysis of the feasibility of restructuring the Bonds, on September 7, 1994 HSH purchased 5,460 of the Bonds for $51 per bond (face par value $5,460,000). HSH's purchase represented 66.3% of the then outstanding Bonds.

G. Hall and others at HSH performed a more complete financial analysis of the Project and determined that the Bonds could be restructured and support a 5% coupon with semi-annual payments. As part of a successful restructuring, HSH needed to obtain the cooperation of the Trustee and secure the consent of the outstanding bondholders to the restructuring terms.

H. Among other things, HSH: (a) negotiated with the developer of the Magnolia Arms Apartments to spend an additional $210,000 on the project; and (b) spent at least $45,000 and expended approximately $112,000 worth of labor hours restructuring the bonds.[2]

I. Prior to the restructuring of the Bonds, the debt service expense for 1996 would have been $735,360. Subsequent to the restructuring, with the lower coupon, the 1996 debt service expense was $337,625. As a result of HSH's actions, bankruptcy of a municipal bond issue was avoided and the apartment complex was enhanced, although the coupon payments were reduced.

---

2 The expense items described in paragraph H do not reflect all expenses HSH incurred in the restructuring.

**Excessive Mark-Ups**

J. From September 7, 1994 through October 12, 1994, HSH sold 4,520 of the Bonds to a small group of sophisticated investors, who for the most part were pre-existing clients of HSH, at prices between $61 and $61.46 per Bond (face par value $4,520,000). Hall was personally responsible for setting the sale price. Based on this price, the Commission finds that HSH charged undisclosed excessive markups between 19% and 21% to its customers.[3]

**Legal Findings**

K. The Commission finds that HSH charged undisclosed excessive markups in the amount of $117,417.

L. From September 7 to October 12, 1994, HSH willfully violated Section 15B(c)(1) of the Exchange Act and Rules G-17 and G-30 promulgated by the Municipal Securities Rulemaking Board, in that it, through the use of the mails or the means and instrumentalities of interstate commerce, taking into consideration all relevant factors, sold municipal securities from HSH's own account to customers at aggregate prices (including markups) that were unfair and unreasonable, as more fully described in paragraphs II.A. - II.J. herein.

M. From September 7 to October 12, 1994, Hall willfully aided and abetted and caused HSH's violations of Section 15B(c)(1) of the Exchange Act and Rules G-17 and G-30 promulgated by the Municipal Securities Rulemaking Board, in that HSH, aided and abetted by Hall, through the use of the mails or the means and instrumentalities of interstate commerce, taking into consideration all relevant factors, sold municipal securities from HSH's own account to customers at aggregate prices (including markups) that were unfair and unreasonable, as more fully described in paragraphs II.A. - II.J. herein.

---

[3] In calculating the markups charged by HSH, HSH's purchase price of $51 per bond was determined to be the fair market value of the securities at time of subsequent sale in light of the short passage of time (approximately 38 days from first until final sale), and the lack of any significant intervening event.

III.

In view of the foregoing, the Commission deems it appropriate and in the public interest to impose the remedial sanctions and cease-and-desist order specified in the Offer.

Accordingly, **IT IS ORDERED THAT:**

A. Respondent HSH cease and desist from committing or causing any violation or future violation of Section 15B(c)(1) of the Exchange Act and Rules G-17 and G-30 promulgated by the Municipal Securities Rulemaking Board;

B. Respondent Hall cease and desist from committing or causing any violation or future violation by a broker-dealer of Section 15B(c)(1) of the Exchange Act and Rules G-17 and G-30 promulgated by the Municipal Securities Rulemaking Board;

C. Respondent Hall is censured;

D. Respondent HSH, within fifteen (15) days from the entry of this Order, pursuant to Section 21B of the Exchange Act, shall pay a civil penalty in the amount of twenty-five thousand dollars ($25,000.00) to the United States Treasury. Such payment shall be: (1) made by United States postal money order, certified check, bank cashier's check, or bank money order; (2) made payable to the Securities and Exchange Commission; (3) transmitted to the Comptroller, Securities and Exchange Commission, Mail Stop 0-3, 450 Fifth Street, N.W., Washington, D.C. 20549; and (4) submitted under cover letter that identifies HSH and Hall as Respondents in this proceeding, and the file number of these proceedings (3-9613 ), a copy of which cover letter and money order or check shall be sent to Frederick M. Lehrer, Esq., Securities and Exchange Commission, Southeast Regional Office, 1401 Brickell Avenue, Suite 200, Miami, Florida 33131; and

E. Respondent HSH, within fifteen (15) days from the entry of this Order, pursuant to Sections 21B(e) and 21C of the Exchange Act, shall pay disgorgement and prejudgment interest in the amount of $135,412 to the United States Treasury. Such payment shall be: (1) made by United States postal money order, certified check, bank cashier's check, or bank money order; (2) made payable to the Securities and Exchange Commission; (3) transmitted to the Comptroller, Securities and Exchange Commission, Mail Stop 0-3, 450 Fifth Street, N.W., Washington, D.C. 20549; and (4) submitted under cover letter that identifies HSH and Hall as Respondents in this

proceeding, and the file number of these proceedings (3-9613), a copy of which cover letter and money order or check shall be sent to Frederick M. Lehrer, Esq., Securities and Exchange Commission, Southeast Regional Office, 1401 Brickell Avenue, Suite 200, Miami, Florida 33131.

By the Commission.

Jonathan G. Katz
Secretary

**SERVICE LIST**

Rule 141 of the Commission's Rules of Practice provides that the Secretary, or another duly authorized officer of the Commission, shall give a copy of the Order Instituting Public Administrative and Cease-and-Desist Proceedings Pursuant to Sections 15(b), 19(h), and 21C of the Securities Exchange Act of 1934, Making Findings and Imposing Remedial Sanctions and Cease-and-Desist Order to each person named as a party in the order and their legal agent.

The attached Order Instituting Public Administrative and Cease-and-Desist Proceedings Pursuant to Sections 15(b), 19(h), and 21(C) of the Securities Exchange Act of 1934, Making Findings and Imposing Remedial Sanctions and Cease-and-Desist Order has been sent to the following parties and other persons entitled to notice:

Chief Administrative Law Judge Brenda Murray
Office of Administrative Law Judges
Stop 11-6
Securities and Exchange Commission
450 5th Street, N.W.
Washington, DC 20549

Laurie E. Stewart, Esq.
Branch of Regional Office Assistance
Stop 8-9
Division of Enforcement
Securities and Exchange Commission
450 5th Street, N.W.
Washington, DC 20549

Frederick M. Lehrer, Esq.
Securities and Exchange Commission
Southeast Regional Office
1401 Brickell Avenue, Suite 200
Miami, FL 33131

Howe, Solomon and Hall, Inc.
c/o Mr. Ronald Solomon, President
100 S.E. Second Street
Miami, FL 33131

Mr. Christopher J. Hall
c/o Howe, Solomon and Hall, Inc.
100 S.E. Second Street
Miami, FL 33131

Mark F. Raymond, Esq.
Counsel for the Respondents
Tew & Beasley, L.L.P.
201 South Biscayne Blvd.
Suite 2600
Miami, FL 33131