# EXHIBIT 19



2041

## PENSON FINANCIAL SERVICES, INC.
### AND/OR BROKER DEALERS
### FOR WHICH IT CLEARS

### CUSTOMER ACCOUNT AGREEMENT

| Account Number: | Full Name and Address on Account | Social Security Number/Tax I.D. |
|---|---|---|
| 2041 | CHRISTOPHER J. HALL<br>2843 S. BAYSHORE DR P-3D<br>MIAMI FL 33133 | 5271<br>This must match the first named person on this account. |

### CERTIFICATION OF TAXPAYER ID NUMBER (SUBSTITUTE W-9)

Check appropriate box: ☒ Individual/Sole proprietor  ☐ Corporation  ☐ Partnership  ☐ Other _____

Under penalty of perjury I certify that:

(1) The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me) and
(2) I am not subject to backup withholding because (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding (does not apply to real estate transactions, mortgage interest paid, the acquisition or abandonment of secured property, contributions to an individual retirement account (IRA), and payments other than interest and dividends).
(3) I am a U.S. person (including a U.S. resident alien).

Certification Instructions — You must cross out item (2) above if you have been notified by the IRS that you are currently subject to backup withholding because of the under reporting of income.

### DISCLOSURE OF NAME/ADDRESS ON SECURITIES YOU OWN

Under rule 14b-1(c) of the Securities Exchange Act, we are required to disclose to an issuer the name, address, and securities position of our customers who are beneficial owners of that issuer's securities unless the customer objects. Please check below if you do not want your ownership disclosed.

_____ I object to the disclosure of such information

### AUTHORIZATION TO EARN INTEREST ON FUNDS AWAITING INVESTMENT

This is to confirm my intention to reinvest cash credit balances held by you in my name, and I further confirm that this cash credit balance is being maintained with you solely for the purpose of reinvestment. I understand that cash balances of up to $100,000 are protected by the Securities Investor Protection Corporation (SIPC), but that SIPC coverage is not available for funds maintained solely for the purpose of earning interest.

BY SIGNING BELOW, THE UNDERSIGNED AGREES TO ALL TERMS OF THE CUSTOMER AGREEMENT PRINTED ON THIS SIDE AND THE REVERSE OF THIS DOCUMENT. THE UNDERSIGNED ACKNOWLEDGES RECEIPT OF A COPY OF THIS AGREEMENT, THE INFORMATION BROCHURE PREPARED BY PENSON FINANCIAL SERVICES, INC. AND PENSON'S PRIVACY POLICY. THE UNDERSIGNED CERTIFIES THAT THE UNDERSIGNED HAS READ AND UNDERSTANDS ALL PROVISIONS OF THIS AGREEMENT. THIS AGREEMENT BENEFITS PENSON FINANCIAL SERVICES, INC., INTRODUCING BROKERS FOR WHICH IT CLEARS AND PERSONS RELATED TO EACH OF THE FOREGOING. THE REVERSE SIDE OF THIS AGREEMENT, PARAGRAPH 8, CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE.

Important information about procedures for opening a new account: To help the government fight the funding of terrorism and money laundering activities, federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. What this means to you: when you open an account, we will ask for your name, address, date of birth and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

Date of Delivery of Privacy Policy: _____

**For use by Individuals, including Joint accounts:**

Signature: _(signed)_

Print Name: CHRISTOPHER J. HALL

Signature (Second Party, If Joint Account): _____

Print Name: _____

Date: _____

**For use by entity accounts only (i.e. corporations, partnerships, trusts):**

Is this account for a foreign bank?  ☐ Yes  ☐ No – If Yes, please list

Agent for service of process: _____

Is this account for a foreign shell bank?  ☐ Yes  ☐ No.

Does this firm offer services to a foreign shell bank?  ☐ Yes  ☐ No

If you answered yes to any of the above questions, Corporation will need to complete Certification Regarding Correspondent Accounts.

Signature: _____

Print Name: _____

Title: _____    Date: _____

*[Stamp: RECEIVED OCT 28 2003]*

1. **Applicable Rules and Regulations.** All transactions shall be subject to the constitution, rules, regulations, customs and usages of the exchange or market and its clearing house, if any, upon which such transactions are executed, except as otherwise specifically provided in this agreement.
2. **Definitions.** "Introducing broker" means any brokerage firm which introduces securities transactions on behalf of the undersigned, which transactions are cleared through you, whether one or more. "Obligations" means all indebtedness, debit balances, liabilities or other obligations of any kind of the undersigned to you, whether now existing or hereafter arising. "Securities and other property" shall include, but shall not be limited to, money, securities, commodities or other property of every kind and nature and all contracts and options relating thereto, whether for present or future delivery. "You" or "your" refers to Penson Financial Services, Inc.
3. **Breach; Security Interest.** Whenever in your discretion you consider it necessary for your protection, or for the protection of the undersigned's introducing firm or in the event of, but not limited to: (i) any breach by the undersigned of this or any other agreement with you or (ii) the undersigned's failure to pay for securities and other property purchased or to deliver securities and other property sold, you may sell any or all securities and other property held in any of the undersigned's accounts (either individually or jointly with others), cancel or complete any open orders for the purchase or sale of any securities and other property, and/or borrow or buy-in any securities and other property required to make delivery against any sale, including a short sale, effected for the undersigned, all without demand for deposit of collateral, other notice of sale or purchase, or other notice or advertisement, each of which is expressly waived by the undersigned, and/or you may require the undersigned to deposit cash or adequate collateral to the undersigned's account prior to any settlement date in order to assure the performance or payment of any open contractual commitments and/or unsettled transactions. Any and all securities and other property belonging to the undersigned or in which the undersigned may have an interest held by you or carried in any of the undersigned's accounts with you (either individually or jointly with others) shall be subject to a first and prior security interest and lien for the discharge of the undersigned's obligations to you, wherever or however arising and without regard to whether or not you have made advances with respect to such securities and other property, and you are hereby authorized to sell and/or purchase

Penson CAG – 9/2003

**PX 92**

F.O.I.A. Confidential Treatment Requested on Behalf of Penson Worldwide Inc. by Akin Gump Strauss Hauer & Feld LLP

PWI-SEC-340212

any and all securities and other property in any of the undersigned's accounts, and/or to transfer any such securities and other property among any of the undersigned's accounts to the fullest extent of the law and without notice where allowed. The costs and expenses of collection of the debit balance and any unpaid deficiency in the accounts of the undersigned with you, including but not limited to reasonable attorneys' fees and expenses, incurred and payable or paid by you shall be payable to you by the undersigned.

**4. Cancellation.** You are authorized, in your discretion, should you for any reason whatsoever deem it necessary for your protection, without notice, to cancel any outstanding order, to close out the accounts of the undersigned, in whole or in part, or to close out any commitment made on behalf of the undersigned.

**5. Payment of Indebtedness Upon Demand.** The undersigned shall at all times be liable for the payment upon demand of any obligations owing from the undersigned to you, and the undersigned shall be liable to you for any deficiency remaining in any such accounts in the event of the liquidation thereof (as contemplated in Paragraph 3 of this Agreement or otherwise), in whole or in part, by you or by the undersigned; and the undersigned shall make payment of such obligations upon demand. If Customer also holds a futures account with Penson Financial Futures, Inc. ("PFFI"), Customer hereby authorizes Penson, without prior notice, to transfer from any account held with Penson to any account held with PFFI, any assets that PFFI represents to Penson are reasonably required to avoid the calling of margins for such PFFI account or the payment of any obligations owed Penson by Customer. Customer also authorizes Penson to request from PFFI assets held by PFFI that in Penson's judgment may be reasonably required to avoid the calling of margins for a Penson account or the payment of any obligations owed Penson by Customer.

**6. Accounts Carried as Clearing Broker.** The undersigned understands that you are carrying the accounts of the undersigned as clearing broker by arrangement with the undersigned's introducing broker through whose courtesy the account of the undersigned has been introduced to you. Until receipt from the undersigned of written notice to the contrary, you may accept from and rely upon the undersigned's introducing broker for (a) orders for the purchase or sale in said account of securities and other property, and (b) any other instructions concerning the undersigned's accounts. The undersigned represents that the undersigned understands that you act only to clear trades introduced by the undersigned's introducing broker and to effect other back office functions for the undersigned's introducing broker. The undersigned confirms to you that the undersigned is relying for any advice concerning the undersigned's accounts solely on the undersigned's introducing broker. The undersigned understands that all representatives, employees and other agents with whom the undersigned communicates concerning the undersigned's account are agents of the introducing broker, and not your representatives, employees or other agents. The undersigned understands that you are not a principal of or partner with, and do not control in any way, the introducing broker or its representatives, employees or other agents. The undersigned understands that you will not review the undersigned's accounts and will have no responsibility for trades made in the undersigned's accounts. You shall not be responsible or liable for any acts or omissions of the introducing broker or its representatives, employees or other agents. Notwithstanding the foregoing, in the event that the undersigned initiates a claim against you in your capacity as clearing broker and does not prevail, the undersigned shall be responsible for the costs and expenses associated with your defense of such claim.

**7. Communications.** You may send communications to the undersigned at the undersigned's address or at such other address as the undersigned may hereafter give you in writing, and all communications so sent, whether by mail, telegraph, or otherwise, shall be deemed given to the undersigned personally, whether actually received or not. Reports of execution of orders and statements of accounts of the undersigned shall be conclusive if not objected to in writing to you, the former within five (5) days and the latter within ten (10) days, after forwarding by you.

THE FOLLOWING ARBITRATION AGREEMENT SHOULD BE READ IN CONJUNCTION WITH THESE DISCLOSURES:
(a) ARBITRATION IS FINAL AND BINDING ON THE PARTIES;
(b) THE PARTIES ARE WAIVING THEIR RIGHT TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO JURY TRIAL;
(c) PRE-ARBITRATION DISCOVERY IS GENERALLY MORE LIMITED THAN AND DIFFERENT FROM COURT PROCEEDINGS;
(d) THE ARBITRATORS' AWARD IS NOT REQUIRED TO INCLUDE FACTUAL FINDINGS OR LEGAL REASONING AND ANY PARTY'S RIGHT TO APPEAL OR TO SEEK MODIFICATION OF RULINGS BY THE ARBITRATORS IS STRICTLY LIMITED; AND
(e) THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.

**8. ARBITRATION AGREEMENT.** ANY AND ALL CONTROVERSIES, DISPUTES OR CLAIMS BETWEEN THE UNDERSIGNED AND YOU, OR THE INTRODUCING BROKER, OR THE AGENTS, REPRESENTATIVES, EMPLOYEES, DIRECTORS, OFFICERS OR CONTROL PERSONS OF YOU OR THE INTRODUCING BROKER, ARISING OUT OF, IN CONNECTION WITH, FROM OR WITH RESPECT TO (a) ANY PROVISIONS OF OR THE VALIDITY OF THIS AGREEMENT OR ANY RELATED AGREEMENTS, (b) THE RELATIONSHIP OF THE PARTIES HERETO, OR (c) ANY CONTROVERSY ARISING OUT OF YOUR BUSINESS, THE INTRODUCING BROKER'S BUSINESS OR THE UNDERSIGNED'S ACCOUNTS, SHALL BE CONDUCTED PURSUANT TO THE CODE OF ARBITRATION PROCEDURE OF THE NASD. ARBITRATION MUST BE COMMENCED BY SERVICE OF A WRITTEN DEMAND FOR ARBITRATION OR A WRITTEN NOTICE OF INTENTION TO ARBITRATE. THE DECISION AND AWARD OF THE ARBITRATOR (S) SHALL BE CONCLUSIVE AND BINDING UPON ALL PARTIES, AND ANY JUDGMENT UPON ANY AWARD RENDERED MAY BE ENTERED IN A COURT HAVING JURISDICTION THEREOF, AND NEITHER PARTY SHALL OPPOSE SUCH ENTRY.

No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action, or who is a member of a putative class who has not opted out of the class with respect to any claim encompassed by the putative class action until (i) the class certification is denied; or (ii) the class is de-certified; or (iii) the customer is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.

**9. Representations.** The undersigned represents that the undersigned is of majority age, that the undersigned is not an employee of any exchange, or of any corporation of which any exchange owns a majority of the capital stock, or of a member of any exchange, or of a member firm or member corporation registered on any exchange or of a bank, trust company, insurance company or of any corporation, firm or individual engaged in the business dealing either as broker or as principal in securities, bills of exchange, acceptances or other forms of commercial paper. If the undersigned is a corporation, partnership, trust or other entity, the undersigned represents that its governing instruments permit this Agreement, that this Agreement has been authorized by all applicable persons and that the undersigned signatory is authorized to bind the undersigned. The undersigned represents that the undersigned shall comply with all applicable laws, rules and regulations in connection with the undersigned's account. The undersigned further represents that no one except the undersigned has an interest in the account or accounts of the undersigned with you.

**10. Joint Accounts.** If the undersigned shall consist of more than one person, the undersigned's obligations under this Agreement shall be joint and several. References to the "undersigned" shall include each of the undersigned. You may rely on transfer or other instructions from any one of the undersigned in a joint account, and such instructions shall be binding on each of the undersigned. You may deliver securities or other property to, and send confirmations; notices, statements and communications of every kind, to any one of the undersigned, and such action shall be binding on each of the undersigned. Notwithstanding the foregoing, you are authorized in your discretion to require joint action by the joint tenants with respect to any matter concerning the joint account, including but not limited to the giving or cancellation of orders and the withdrawal of money, securities, futures or commodities.

**11. Other Agreements.** If the undersigned trades on margin or in short accounts, the undersigned agrees to be bound by the terms of your Customer Margin and Short Account Agreement. If the undersigned trades any options, the undersigned agrees to be bound by the terms of your Customer Option Agreement. The undersigned understands that copies of these agreements are available from you and, to the extent applicable, are incorporated by reference herein. The terms of these other agreements are in addition to the provisions of this Agreement and any other written agreements between you and the undersigned.

**12. Data Not Guaranteed.** The undersigned expressly agrees that any data or online reports is provided to the undersigned without warranties of any kind, express or implied, including but not limited to, the implied warranties of merchantability, fitness of a particular purpose or non-infringement. The undersigned acknowledges that the information contained in any reports provided by you is obtained from sources believed to be reliable but is not guaranteed as to its accuracy of completeness. Such information could include technical or other inaccuracies, errors or omissions. In no event shall you or any of your affiliates be liable to the undersigned or any third party for the accuracy, timeliness, or completeness of any information made available to the undersigned or for any decision made or taken by the undersigned in reliance upon such information. In no event shall you or your affiliated entities be liable for any special incidental, indirect or consequential damages whatsoever, including: without limitation, those resulting from loss of use, data or profits, whether or not advised of the possibility of damages, and on any theory of liability, arising out of or in connection with the use of any reports provided by you or with the delay or inability to use such reports.

**13. Order Flow Disclosure.** Depending on the security traded and absent specific direction from the undersigned, stock orders are routed via an electronic system to a listed, NASDAQ or over the counter broker or dealer. You or your correspondents may receive cash payments for routing such orders to specific brokers or dealers. Because these agents are market makers, they carry inventory in their specific securities, allowing for price improvement to the undersigned by trading through their inventories. Accordingly, the undersigned's orders will always be executed at the "best bid" or "best offer", or at a price superior to either, by virtue of the market maker's inventory positioning capabilities.

**14. Credit Check.** You are authorized, in your discretion, should you for any reason deem it necessary for your protection to request and obtain a consumer credit report for the undersigned.

**15. Miscellaneous.** If any provision of this Agreement is held to be unenforceable, it shall not affect any other provision of this Agreement. The headings of each section of this Agreement are descriptive only and do not modify or qualify any provision of this Agreement. This Agreement and its enforcement shall be governed by the laws of the state of Texas and shall cover individually and collectively all accounts which the undersigned has previously opened, now has open or may open or reopen with you, or any introducing broker, and any and all previous, current and future transactions in such accounts. Except as provided in this Agreement, no provision of this Agreement may be altered, modified or amended unless in writing signed by your authorized representative. This Agreement and all provisions shall inure to the benefit of you and your successors, whether by merger, consolidation or otherwise, your assigns, the undersigned's introducing broker, and all other persons specified in Paragraph 8. You shall not be liable for losses caused directly or indirectly by any events beyond your reasonable control, including without limitation, government restrictions, exchange or market rulings, suspension of trading or unusually heavy trading in securities, a general change in economic, political or financial conditions, war or strikes. You may transfer the accounts of the undersigned to your successors and assigns. This Agreement shall be binding upon the heirs, executors, administrators, successors and assigns of the undersigned.

Penson CAG – 9/2003

F.O.I.A. Confidential Treatment Requested on
Behalf of Penson Worldwide Inc. by Akin Gump
Strauss Hauer & Feld LLP

PWI-SEC-340213

APR.-28' 99 (WED) 12:58   HOWE SOLOMON & HALL          TEL:305 577 8988        P. 002
04/28/99   WED 10:43 FAX 214 987 7539   PENSON FINANCIAL                       ☒001

# PENSON FINANCIAL SERVICES, INC.
A division of Service Asset Management Company
## AND/OR BROKER DEALERS FOR WHICH IT CLEARS
### CUSTOMER OPTION AGREEMENT

To open an Options Account we must obtain the following information in addition to that on the New Account form. If account is a joint account, we need information as to all owners. Information concerning the customer obtained from sources other than the customer, including estimates, should be noted as such on this form. The customer's refusal to provide information called for on this form should also be noted.

Account Name: CHRISTOPHER J. HALL
Address: 2843 S. BAYSHORE
         MIAMI, FLA
         33133
Age: 40   Work Telephone #: 577-8628
Employer & Position: RETIRED

Account Number: [REDACTED] 2041
Home Telephone #: _____
No. Of Dependents: _____   Marital Status: S M D W N/A
Spouse's Name: _____
Age: _____ Work Telephone #: _____
Spouse's Employer & Position: _____

**INVESTMENT OBJECTIVES & ANTICIPATED TYPE(S) OF OPTION TRANSACTIONS**
Choose one or more

| | |
|---|---|
| Income | Covered Call Writing |
| Safety or Leverage | Puts/Purchasing Options, Puts for Safety of Leverage, Calls for Leverage |
| Speculation X | Other Option Transactions (Uncovered), Spreads, Straddles, Combinations |

**PREVIOUS INVESTMENT EXPERIENCE**

| | Years of Experience | Usual Size of Trades | Usual No. Per Year |
|---|---|---|---|
| Options | 20 | 100 | 5 |
| Stocks | 20 | 1000 | 500 |
| Bonds | 22 | 22 DDK | 75 |
| Commodities | N/A | | |
| Other (specify) | | | |

### APPROXIMATE ANNUAL INCOME AND NET WORTH

Salary: N/A
Bonus: N/A
Other (specify): _____
Total: _____

Approximate net worth (exclusive of family residence, furnishings, autos, boats, etc): 10,000,000
Approximate liquid net worth (cash, cash equivalents, marketable securities): 10,000,000

BY SIGNING BELOW, THE UNDERSIGNED CERTIFIES THAT THE INFORMATION CONTAINED HEREIN IS COMPLETE AND ACCURATE. THE UNDERSIGNED AGREES TO ADVISE ITS BROKER OF ANY MATERIAL CHANGE IN THE UNDERSIGNED'S FINANCIAL STATUS AND/OR INVESTMENT OBJECTIVES. BY SIGNING BELOW, THE UNDERSIGNED AGREES TO ALL TERMS OF THE CUSTOMER OPTIONS AGREEMENT PRINTED ON THE BOTH SIDES OF THIS DOCUMENT. THE REVERSE SIDE OF THIS DOCUMENT, PARAGRAPH 9, CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE.

For use by individual, including joint accounts:
Signature: [signed]
(Print Name) CHRISTOPHER HALL

Signature (Second Party, if Joint Account): _____
(Print Name): _____
Date: _____

For use by entity customers only (i.e., corporations, partnerships, trusts)
Customer Name: _____
By: _____
Title: _____
(Example: President, General Partner, Trustee)

[RECEIVED APR 29 1999 stamp]

**BROKERS USE ONLY**
Date "Characteristics and Risks of Standard Options" delivered: _____

**TO BE COMPLETED BY MANAGER PRIOR TO OPTION TRADING**
Approved for option trading ___ G.P.

04/28/99   WED 10:49   [TX/RX NO 7447]  ☒002

F.O.I.A. Confidential Treatment Requested on Behalf of Penson Worldwide Inc. by Akin Gump Strauss Hauer & Feld LLP

PWI-SEC-340214