# EXHIBIT 34

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release is made this ____ day of November, 2010 (the "Effective Date"), by and between MS Realty on the one hand and Stone Oak on the other hand. MS Realty and Stone Oak may be collectively referred to as the "Parties." MS Realty and Stone Oak are each comprised of multiple parties, including those identified at Sections 1.1 and 1.2 below.

### 1. The Parties

1.1 <u>MS Realty</u> includes each of the following parties, all of whom agree to and are bound by the terms of this Settlement Agreement and Release:

Michael S. McGrath
Stephen S. Spessard
MS Realty Investments II, Ltd.
MS Equities II, LLC
Inwood Partners
McGrath Investments
MS Realty Investments VII, L.P.
MS Equities VII, LLC
Asset Plus Corporation
Asset Campus Housing, Inc.

1.2 <u>Stone Oak</u> includes each of the following parties, all of whom agree to and are bound by the terms of this Settlement Agreement and Release:

Thomas R. Johnson
Christopher J. Hall
Call Now, Inc.
SO Prime LLC
Stone Oak Prime, L.P.

### 2. Intent of this Settlement Agreement and Release

2.1 The "<u>Limited Partnerships</u>" Certain of the Parties own interests in one or two limited partnerships which previously owned title to multi-family residential properties. The "Limited Partnerships" are The Estates at Canyon Ridge, Ltd. (referred to as "Estates") and Cambridge at Auburn, LP. (referred to as "Auburn"). Certain of the Parties have disputes, and may have Claims (defined at Sec. 2.2 below), relating to the Limited Partnerships. Subject to certain conditions which are identified in this Settlement Agreement and Release, the Parties want to settle, resolve, and release all Claims they may have relating to the Limited Partnership in order to avoid expense and risk.

2.2 The "<u>Claims</u>" means any and all claims that relate to the Limited Partnership, including without limitation any claim or cause of action arising or accruing before the Effective

2065211v1

PX 31

HALL00947

Date of this Settlement Agreement and Release in any way arising out of, resulting from, or related to the Parties' relationships, ownership interests, debts, rights, and obligations relating to the Limited Partnerships. The "Claims" shall include, but are not limited to, all actions, claims, demands, suits, causes of action, liabilities, costs, expenses, remedies, obligations, attorney's fees, rights to recover damages, offsets, recoupments, liens and damages of every kind, including, but not limited to, any and all compensatory and punitive damages, known or unknown, foreseen or unforeseen, fixed or contingent, liquidated or unliquidated, accrued or which may ever accrue based in facts arising prior to Effective Date of this Settlement Agreement and Release, whether or not asserted prior to the Effective Date of this Settlement Agreement and Release, whether based in contract, tort, fraud, equity, under any state or federal statute, insurance policy, subrogation, or any other theory of recovery, including any and all actions, innocent, negligent, or intentional failures to act, or omissions, or misrepresentations of facts, events, transactions, or occurrences, alleged breaches of fiduciary duty or any duty of good faith and fair dealing, and all things that any released person or entity did or did not do at any time before the Effective Date of this Settlement Agreement relating to or arising out of the Limited Partnerships. The Claims specifically include any right either Party may have to request extraordinary relief, including temporary restraining orders and injunctive relief, and any right either Party may have to take action to cloud title to the properties owned by the Limited Partnerships. The Parties specifically intend that the releases described below include all claims arising out of, resulting from, or in any manner related to the Claims as defined in this paragraph and any and all legal and tax consequences arising out of, resulting from, or in any manner related to this Settlement Agreement and Release. All references herein to things that any released person or entity did or did not do include every act and omission, EVEN IF SUCH ACT OR OMISSION IS FOUND TO HAVE BEEN AN INTENTIONAL ACT OR OMISSION, A NEGLIGENT ACT OR OMISSION, WHETHER SIMPLE, GROSS, SOLE, OR CONCURRENT, STRICT LIABILITY, OR A VIOLATION OF ANY CONTRACT, AGREEMENT, CONSTITUTIONAL PROVISION, STATUTE, OR REGULATION OF ANY SOVEREIGN.

2.3 The "Amegy Loan" The real property which Estates previously owned was financed by and was collateral for a loan by Amegy Bank to Estates in the principal amount of $24,500,000 (the "Amegy Loan").

2.4 "Connell" means Connell Canyon Ridge LLC, which bought the real property formerly owned by Estates on November 2, 2010.

3. Consideration

3.1 Good consideration The Parties agree and acknowledge that the consideration for the releases described in Section 5 below consists of the Parties' agreement to forbear from asserting and to waive and release their Claims, and that this consideration is valuable and fair consideration for the releases. In addition, the Parties agree as follows.

    3.1.1 MS Realty contends that under certain agreements between some of the Parties an event of default has occurred which gave MS Realty certain rights prior to the date of closing of the sale of Estates' assets to Connell, including the right to

        acquire Stone Oak's interest in Estates. In consideration of the Stone Oak release described in Section 5 below, MS Realty agrees to forbear from assertion of this contended right and to release any Claims related to or arising out of this contention, as described in Section 5 below.

    3.1.2    Stone Oak contends that no event of default occurred prior to the sale of Estates' assets to Connell and that MS Realty had no right to acquire Stone Oak's interest in Estates at any time, including prior to the sale of Estates' assets to Connell. Stone Oak further contends that MS Realty had no right to vote Stone Oak's interest to approve the sale of Estates' assets to Connell or in any other regard, but in consideration of the MS Realty release described in Section 5 below, Stone Oak agrees to forbear from assertion of this contention and to release any Claims related to or arising out of this contention, as described in Section 5 below.

4.    Distribution of the Proceeds from the Connell Purchase of Estates' Assets

    4.1    On November 2, 2010, Connell purchased Estates' real property assets for a total of $30.7 million. After application of all credits and deductions, including repayment of the Amegy Loan, real estate commissions, title charges, certain legal fees, adjustments and prorations, real property taxes and other charges (including the escrow amount described at Section 4.1.1 below), the net amount paid to Estates was $4,265,818.74. That amount shall be distributed to the parties upon execution of this Settlement Agreement and Release according to the terms of Schedule A, attached.

    4.1.1    The amount of $250,000 will be held in escrow to be used to defend against or resolve any claims which Connell, or any party claiming by, through, or under Connell, may bring against Estates in connection with Connell's purchase of Estates' real property. This amount shall be distributed to the parties according to the terms of Schedule A 180 days after closing if Connell (or any party claiming by, through, or under Connell) has not initiated or threatened litigation prior to that date, or as soon thereafter as MS Realty, acting in good faith, deems prudent.

    4.1.2    In the event that Connell, or any party claiming by, through, or under Connell, initiates or threatens litigation against Estates, the escrowed sum described in Section 4.1.1 shall be used to pay for Estates' defense, or to resolve such litigation. MS Realty shall have the right and authority to manage litigation initiated against Estates subsequent to the date of execution of this Settlement Agreement and Release, including without limitation the right and authority to use or release the escrowed funds described in Section 4.1.1 above for any permitted purpose including without limitation to pay attorneys' fees or to resolve litigation.

5.    Releases

    5.1    Stone Oak In return for good and valuable consideration as set forth herein, the receipt of which Stone Oak expressly acknowledges, Stone Oak, individually and for the persons and entities identified in Section 1.2 above, including their present, former, and future heirs,

HALL00949

successors, predecessors, beneficiaries, legal representatives, trusts, trustees, administrators, assigns, assignors, subrogees, officers, directors, shareholders, attorneys, employees, servants, agents, partners, and any person or entity claiming by, through, under, or in the name of Stone Oak, if any, RELEASES, ACQUITS and FOREVER DISCHARGES all Claims against MS Realty and the persons and entities described in Section 1.1 above, including all of their present, former, and future parent entities, sister entities, heirs, successors, predecessors, beneficiaries, legal representatives, trusts, trustees, administrators, assigns, assignors, subrogees, attorneys, agents, partners, shareholders, directors, and any others for whom MS Realty may be vicariously or otherwise liable, including any of its liability insurers or reinsurers of and from any of the Claims, except for those rights and liabilities created by this Agreement.

    5.2    MS Realty In return for good and valuable consideration as set forth herein, the receipt of which MS Realty expressly acknowledges, MS Realty, individually and for the persons and entities described in Section 1.1 above, their present, former, and future heirs, successors, predecessors, beneficiaries, legal representatives, trusts, trustees, administrators, assigns, assignors, subrogees, officers, directors, shareholders, attorneys, employees, servants, agents, partners, and any person or entity claiming by, through, under, or in the name of MS Realty, if any, RELEASES, ACQUITS and FOREVER DISCHARGES all Claims against Stone Oak and the persons and entities described in Section 1.2 above, their present, former, and future parent entities, sister entities, heirs, successors, predecessors, beneficiaries, legal representatives, trusts, trustees, administrators, assigns, assignors, subrogees, attorneys, agents, partners, shareholders, directors, and any others for whom it may be vicariously or otherwise liable, including any of its liability insurers or reinsurers of and from any of the Claims, except for those rights and liabilities created by this Agreement.

    5.3    Unknown claims by third parties for personal injury or property damage This Settlement Agreement and Release does not affect or release any Party's right to seek indemnification or contribution for insured claims for personal injury or property damage by persons or entities not parties to this Agreement. Each of the Parties affirmatively represents that at the time of execution of this Agreement, it is not aware or on notice of any such claims.

    5.4    Notwithstanding the other provisions of this Agreement, Claims do not include, and there are not released, any claims or causes of action based on the obligations of the Parties under this Settlement Agreement and Release.

6.    Other Matters

    6.1    Warranty of understanding and acknowledgment The Parties state that they have carefully read this Settlement Agreement and Release, know its contents, and freely and voluntarily agree to all of its terms and conditions, including specifically the disbursement of the proceeds of the Connell purchase of Estates' assets described in Schedule A. Each Party warrants that it has had the opportunity to obtain and utilize the advice of counsel with regard to this Settlement Agreement and Release. Each Party warrants that it shall bear its own legal fees and expenses with respect to the matters pertaining to this Agreement except as otherwise provided herein.

HALL00950

6.2 <u>Entire agreement</u> This Settlement Agreement and Release contains the entire, full and complete agreement between the Parties. There are no oral or other agreements which in any way amend, contradict, or supplement the written terms herein. This Settlement Agreement and Release may only be changed by further written agreement, signed by all Parties hereto.

6.3 <u>Successor and assigns</u> The Parties represent and warrant that they have neither assigned nor transferred any rights to proceeds or claims that they have or may have against any Party. This Settlement Agreement and Release shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns.

6.4 <u>Notices</u> Delivery of notices to be given or demands to be made in accordance with this Settlement Agreement and Release shall be made by fax, personal delivery, first class mail or overnight letter delivery service. If delivery is made by fax, the document(s) with the original signature(s) shall be mailed by first-class prepaid mail no later than the first business day following the date of the confirmed fax transmission.

    6.4.1 <u>Receipt</u> If delivery is made by fax, the document(s) transmitted shall be deemed received on the date the sender receives confirmation from the recipient's equipment that the entire transmission has been received, provided the required mailing is completed. If delivery is made by personal delivery, the document(s) delivered shall be deemed received on the date delivered. If delivery is made by overnight letter delivery service, the document(s) delivered shall be deemed received on the first business day following the day upon which the documents are deposited with the delivery service with delivery charges prepaid or charged to the sender's account.

    6.4.2 <u>Notices and demands; contact information</u> All notices or demands shall be delivered to the parties at the addresses set forth at the beginning of this Settlement Agreement and Release and shall also be sent to the attorneys for the parties as follows:

For Stone Oak:

Thomas R. Johnson
P.O. Box 47535
San Antonio, Texas 78265

For MS Realty:

Bradley M. Whalen
Porter & Hedges, LLP
1000 Main Street, 36th Floor
Houston, Texas 77002-6336

6.5 <u>Full authorization</u> The persons executing this Settlement Agreement and Release warrant and represent to the other Parties that they are authorized to execute this Settlement

HALL00951

Agreement and Release on behalf of the Party whom they purport to represent. The executions on behalf of the corporations have been duly authorized by appropriate resolutions, authorization and/or minutes.

6.6 <u>Counterparts; fax and otherwise imaged signatures</u> This Agreement may be executed in any number of identical counterparts at varying times, all of such separately executed counterparts which shall be taken together as one fully executed document. Faxed and electronic images of signatures have equal dignity and enforceability as physical original signatures.

6.7 <u>Applicable law; joint authorship</u> This Settlement Agreement and Release will be interpreted pursuant to and under Texas law. The Parties acknowledge that each of them has participated in drafting this Settlement Agreement and Release, and ambiguities shall not be interpreted against any Party as drafter of the Settlement Agreement and Release.

6.8 <u>Venue; waiver of right to jury trial</u> Any dispute relating to or arising out of this Settlement Agreement and Release shall be resolved only by suit filed in Harris County, Texas and in no other jurisdiction or venue. The Parties expressly waive any right to trial by jury.

6.9 <u>Taxes, costs, and fees</u> Each party shall bear its own taxes, costs, and attorneys' fees except as specifically otherwise provided. None of the Parties has provided tax advice or consultation to any other Party.

6.10 <u>No breach of fiduciary duty or duty of good faith and fair dealing</u> The Parties agree, acknowledge, and represent that none of the actions contemplated by this Settlement Agreement and Release, the undertakings accepted by the Parties pursuant to this Settlement Agreement and Release, the elements of consideration identified in this Settlement Agreement and Release, the releases embodied in this Settlement Agreement and Release, nor the obligations created by this Settlement Agreement and Release constitutes a breach of fiduciary duty or a breach of any duty of good faith and fair dealing by any person or entity. By executing this Settlement Agreement and Release, each Party waives any right, claim, or position to the contrary.

6.11 <u>Representation that no Party has actual knowledge of any accrued, pending, potential, or threatened claim relating to the Partnerships</u> Each Party represents that he or it has no actual notice or actual knowledge of any accrued, pending, potential, or threatened claim concerning the Partnerships, the conduct of any Partner, or the Partnerships' former real property assets, except for claims which are released by this Settlement Agreement and Release. This representation is a pre-condition to this Settlement Agreement and Release, and the Parties would not have executed this Settlement Agreement and Release but for this representation. Each Party represents to the others that he is not aware of any specific accrued or potential Claims concerning Auburn.

6.12 <u>Disputes concerning this Settlement Agreement and Release</u> The sole venue for litigation between the Parties concerning or arising out of this Settlement Agreement and Release shall be in any state or federal court of competent jurisdiction in Harris County, Texas. In any

HALL00952

litigation concerning or arising out of this Settlement Agreement and Release, the prevailing party shall recover its attorneys' fees and expenses incurred in litigation from the non-prevailing party.

NOW, THEREFORE, the parties have executed this Settlement Agreement and Release, intending to be legally bound as of the Effective Date.

[Signatures Appear on Separate Pages]

HALL00953

EXECUTED on this _____ day of November 2010.

                                                Michael S. McGrath, Individually

                                                By: _____

| | |
|---|---|
| THE STATE OF TEXAS | § |
| | § |
| COUNTY OF HARRIS | § |

BEFORE ME, the undersigned authority, on this day personally appeared Michael S. McGrath, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he had executed the same in the capacities and for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this _____ day of November 2010.

                                                _____
                                                Notary Public in and for
                                                The State of Texas

                                                My Commission Expires:_____

HALL00954

EXECUTED on this _____ day of November 2010.

                          Stephen S. Spessard, Individually

                          By:_____

THE STATE OF COLORADO       §
                                         §
COUNTY OF EAGLE               §

     BEFORE ME, the undersigned authority, on this day personally appeared Stephen S. Spessard, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that she had executed the same in the capacities and for the purposes and consideration therein expressed.

     GIVEN UNDER MY HAND AND SEAL OF OFFICE this _____ day of November 2010.

                                     _____
                                     Notary Public in and for
                                     The State of Colorado

                                     My Commission Expires:_____

HALL00955

EXECUTED on this _____ day of November 2010.

                                        Michael S. McGrath, as Representative of MS Realty Investments II, Ltd., MS Equities II, LLC, McGrath Investments, MS Realty Investments VII, L.P., MS Equities VII, LLC, Asset Plus Corporation, and Asset Campus Housing, Inc.

                                        By: _____

| | |
|---|---|
| THE STATE OF TEXAS | § |
| | § |
| COUNTY OF HARRIS | § |

    BEFORE ME, the undersigned authority, on this day personally appeared Michael S. McGrath, the authorized representative of MS Realty Investments II, Ltd., MS Equities II, LLC, McGrath Investments, MS Realty Investments VII, L.P., MS Equities VII, LLC, Asset Plus Corporation, and Asset Campus Housing, Inc., known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that she had executed the same in the capacities and for the purposes and consideration therein expressed.

    GIVEN UNDER MY HAND AND SEAL OF OFFICE this _____ day of November 2010.

                                        _____
                                        Notary Public in and for
                                        The State of Texas

                                        My Commission Expires:_____

HALL00956

EXECUTED on this _____ day of November 2010.

                                  Stephen S. Spessard, as Representative of
                                  Inwood Partners

                                  By: _____

THE STATE OF COLORADO        §
                                       §
COUNTY OF EAGLE              §

      BEFORE ME, the undersigned authority, on this day personally appeared Stephen S. Spessard, the authorized representative of Inwood Partners, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that she had executed the same in the capacities and for the purposes and consideration therein expressed.

      GIVEN UNDER MY HAND AND SEAL OF OFFICE this _____ day of November 2010.

                                  _____
                                  Notary Public in and for
                                  The State of Colorado

                                  My Commission Expires:_____

HALL00957

EXECUTED on this 10 day of November 2010.

Thomas R. Johnson, Individually

By: _____

THE STATE OF ~~TEXAS~~ MASSACHUSETTS  §
 §
COUNTY OF ~~HARRIS~~ BARNSTABLE  §

BEFORE ME, the undersigned authority, on this day personally appeared Thomas R. Johnson, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that she had executed the same in the capacities and for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this 10 day of November 2010.

_____
Notary Public in and for
The State of ~~Texas~~ MASSACHUSETTS

My Commission Expires: 1/20/2016

2065211v1                12 of 12

FROM     (WED)NOV 10 2010 12:21/ST. 12:20/No. 7822754854 P 1

Nov 10 10 01:14p     Thomas R Johnson              7742070129          p.1

EXECUTED on this 10 day of November 2010.

Christopher J. Hall, Individually

By: _____

THE STATE OF TEXAS          §
                            §
COUNTY OF HARRIS            §

BEFORE ME, the undersigned authority, on this day personally appeared Christopher J. Hall, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that she had executed the same in the capacities and for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this 10 day of November 2010.

_____
Notary Public in and for
The State of Florida

My Commission Expires: _____

ROBERT H. BENSON
Commission DD 733555
Expires November 6, 2011

2065211v1            13 of 13

**HALL00959**

EXECUTED on this 10 day of November 2010.

> Thomas R. Johnson, as Representative of Call Now, Inc., SO Prime LLC, and Stone Oak Prime, L.P.
>
> By: _____

THE STATE OF ~~TEXAS~~ MASSACHUSETTS §
§
COUNTY OF ~~HARRIS~~ BARNSTABLE §

BEFORE ME, the undersigned authority, on this day personally appeared Thomas R. Johnson, the authorized representative of Call Now, Inc., SO Prime LLC, and Stone Oak Prime, L.P., known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that she had executed the same in the capacities and for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this 10 day of November 2010.

_____
Notary Public in and for
The State of ~~Texas~~ MASSACHUSETTS

My Commission Expires: 1/20/2016

HALL00960

**Estates at Canyon Ridge**
**Sale Proceeds**

|  |  | Total | 5%<br>MS Realty<br>Investments II, Ltd. | 95%<br>Stone Oak Prime, L.P. |
|---|---|---|---|---|
| Sale Proceeds |  | 30,700,347.18 |  |  |
| Less: Commission |  | (199,550.00) |  |  |
| Less: Closing Costs |  | (138,593.38) |  |  |
| Less: Prorations |  | (641,702.14) |  |  |
| Less: Amegy Bank loan |  | (24,570,437.50) |  |  |
| Net Sale Proceeds |  | 5,150,064.16 |  |  |
| Add: Property Cash Accounts | A | $453,916.06 |  |  |
| Net Cash Proceeds | B | 5,603,980.22 |  |  |
|  |  |  |  |  |
| Deferred Developer Fee | C1 | (199,500.00) |  |  |
| Make-Up 3.25% for 2 Principal payments KeyBank Loan | C2 | (10,145.11) |  |  |
| Make-Up 3.25% for Interest payments KeyBank Loan thru August 31, 2010 | C3 | (3,382.55) |  |  |
| Distributable Sale Proceeds |  | 5,390,952.56 | 175,013.71 | 5,215,938.66 |
|  |  |  |  |  |
| Less: Key Bank loan (payoff) | D | (634,245.42) |  | (634,245.42) |
| Repay Mike & Steve loan - principal |  | - | 981,013.26 | (981,013.26) |
| Repay Mike & Steve loan - Interest thru November 1, 2010 |  | - | 120,140.53 | (120,140.53) |
| Repay MS Realty/Estates loan - interest thru November 1, 2011 |  |  | 241,664.38 | (241,664.38) |
| Net Sale Proceeds | E | 4,756,707.14 | 1,517,831.88 | 3,238,875.27 |
|  |  |  |  |  |
|  |  |  | 3.25% | 96.75% |
| Equity Invested |  | (8,769,629.25) | (284,700.21) | (8,484,929.04) |
| Return of Equity |  |  | 175,013.71 | 3,238,875.27 |
| Loss on Investment |  |  | (109,686.50) | (5,246,053.77) |
|  |  |  |  |  |
| Net Sale Proceeds | E | 4,756,707.14 | 1,517,831.88 | 3,238,875.27 |
| Deferred Developer Fee | C1 | 199,500.00 | 199,500.00 |  |
| Make-Up 3.25% for 2 Principal payments KeyBank Loan | C2 | 10,145.11 | 10,145.11 |  |
| Make-Up 3.25% for Interest payments KeyBank Loan thru August 31, 2010 | C3 | 3,382.55 | 3,382.55 |  |
| Total from Sale | F | 4,969,734.80 | 1,730,859.53 | 3,238,875.27 |

|  |  |  |
|---|---|---|
| KeyBank Payoff | D | $634,245.42 |
| MS Realty Distribution |  | $1,722,743.45 |
| Stone Oak Distribution |  | $2,996,991.35 |
| Withholding for Reps & Warranties |  | $250,000.00 |
| Total | B | $5,603,980.22 |
| KeyBank Payoff | D | $634,245.42 |
| Total Distributable Proceeds | F | $4,969,734.80 |

|  | Current Distribution | Withholding Distribution | Total |  |
|---|---|---|---|---|
| MS Realty Distribution | $1,722,743.45 | $8,116.08 | $1,730,859.53 | F |
| Stone Oak Distribution | $2,996,991.35 | $241,883.92 | $3,238,875.27 | F |
|  | $4,719,734.80 | $250,000.00 | $4,969,734.80 | F |

|  |  |  |
|---|---|---|
| Sales Proceeds |  | $4,265,818.74 |
| Cash Account | A | $453,916.06 |
| Withholding for Reps & Warranties |  | $250,000.00 |
| Total Proceeds | F | $4,969,734.80 |

HALL00961

Estates at Canyon Ridge
Equity Breakdown

| | MS Realty II | Stone Oak Prime | TOTAL | |
|---|---|---|---|---|
| Equity invested and adjustments at time of 8/2009 refinance | | | | |
| Invested capital | 247,075.21 | 6,253,915.78 | 6,500,990.99 | |
| Deferred developer fee | 199,500.00 | | 199,500.00 | |
| Partner loan | | 981,013.26 | 981,013.26 | |
| Key Bank loan | | 1,250,000.00 | 1,250,000.00 | |
| Total | 446,575.21 | 8,484,929.04 | 8,931,504.25 | - Balances agrees with Partner Loan |
| Partnership Interest % | 5.00% | 95.00% | | |
| Adjustments: | | | | |
| Development fee to be paid in full as priority item | (199,500.00) | | (199,500.00) | |
| Distribution not made at closing | 37,625.00 | | 37,625.00 | |
| Updated equity balance | 284,700.21 | 8,484,929.04 | 8,769,629.25 | |
| Partnership Interest % | 3.246% | 96.754% | | |

| | Total | 3.246%<br>MS Realty II | 96.754%<br>Stone Oak Prime | |
|---|---|---|---|---|
| Sale proceeds | 30,700,000.00 | | | |
| Less: Commission | (199,550.00) | | | |
| Closing costs | (100,000.00) | | | |
| Amegy Bank loan | (24,500,000.00) | | | |
| Deferred develper fee | (199,500.00) | | | |
| 3.246% of 2 Key Bank principal payments | (10,145.11) | | | |
| 3.246% of Key Bank Interest payments | (3,113.78) | | | |
| Distributable sales proceeds | 5,687,691.12 | 184,647.13 | 5,503,043.99 | |
| Key Bank loan | | | (625,000.00) | |
| Repay Mike and Steve partner loan | | 981,013.26 | (981,013.26) | |
| Repay Mike and Steve partner loan interest thru 11/1/2010 | | 120,140.53 | (120,140.53) | |
| Repay MS Realty LOC Interest | | 241,664.38 | (241,664.38) | |
| Net Sale Proceeds | | 1,527,465.30 | 3,535,225.82 | |

STONE OAK PRIME BREAKDOWN

| | Original Investment | % Interest | Distribution |
|---|---|---|---|
| Call Now, Inc. | 3,157,249.46 | 48.0724% | 1,699,468.15 |
| Chris Hall | 3,009,870.09 | 45.8284% | 1,620,137.54 |
| Steve & Nancy Hall | 150,240.13 | 2.2876% | 80,870.49 |
| Marilyn Hall | 150,239.77 | 2.2876% | 80,870.30 |
| Tom Johnson | 100,096.32 | 1.5241% | 53,879.34 |
| TOTAL | 6,567,695.77 | 100.0000% | 3,535,225.82 |

HALL00962

Stone Oak Prime Proceeds Distribution ($2,996,991.35)

1. <u>Call Now, Inc.</u>  $1,443,774.71

    Wire to:  Compass Bank
    San Antonio, TX
    ABA# ▮ 547
    For credit to: Call Now, Inc. – Operating Account
    Account number: ▮7361

2. <u>Christopher J. Hall</u>  $1,366,369.92

    Wire $1,050,000.00 to:
    1st United Bank
    Palm Beach, FL
    ABA# ▮4987
    For credit to: James J. Hurchalla & Assoc., P.A., Trust Account
    Account number: ▮3806

    Wire $316,369.92 to:
    Wachovia Bank
    Pompano Beach, FL
    ABA# ▮0021
    For credit to: Christopher J. Hall
    Account number: ▮0207

3. <u>Steven & Nancy Hall</u>  $73,203.47

4. <u>Marilyn Hall</u>  $68,203.31

5. <u>Thomas R. Johnson</u>  $45,439.94

    Wire to:  TD Bank
    Orleans, MA
    ABA# ▮0545
    For Credit to: Thomas R. Johnson
    Account number: ▮9986